## The President, &c. of the GARDINER BANK vs. WHEATON & al.

*W.* conveyed certain real estate to his sureties in a promissory note, by an absolute deed, for their indemnity; taking their written agreement, not under seal to reconvey, on being saved harmless. The estate was worth two thousand dollars. *W.* paid all the debt but four hundred and fifty dollars, which the sureties were compelled to pay, he being insolvent. Afterwards *W.* requested *P.* to redeem the estate out of the hands of the sureties, with their consent, and take a conveyance to himself, for the benefit of *W.* which he did; it being further understood that *P.* should pay such other debts of *W.* as they might subsequently agree upon. He accordingly paid such debts to the amount of four hundred and sixty dollars, for which he had no other security than the real estate:—Hereupon a prior creditor of *W.* filed a bill in equity against *W.* and *P.* impeaching the conveyance for fraud, and praying a discovery and relief. The answers denied all fraudulent intent and covin, but admitted the foregoing facts. And it was held:—

That the transaction between *W.* and his sureties was legal, and that by the terms of it the estate vested absolutely in them on their paying the note :—

That as between *W.* and *P.* it was in law fraudulent and void, against the plaintiffs :—

But that here being no actual covin, *P.* might lawfully charge upon the estate all his payments and expenses actually made and incurred, under the agreement, before the conveyance was impeached.

Whether if a deed declare the purchase-money to have been paid by *A.* parol evidence is admissible to show that it was in fact paid by *B.* so as to raise a resulting trust in favor of *B.*—*quære.*

BILL in equity. The plaintiffs alleged that they were judgment creditors of *Wheaton,* who had conveyed his property to *Prince,*

the other defendant, to defraud them of their due. It was set forth in the bill that *Wheaton* was the owner of the two stores, and the land under them; that in *June,* 1827, being indebted to the *Thomaston* bank in about eighteen hundred dollars, he agreed with *John Gleason, Halsey Healey* and *William Cole,* to become responsible for that debt, which they did; and to indemnify them he conveyed to them these stores and land; taking back their written engagement, not under seal, to reconvey the same, on being indemnified against their suretyship;—that *Wheaton* continued in possession of the property, making sundry payments on this debt till he had reduced it to four hundred and eleven dollars and twenty-five cents;—that *Healey* having become insolvent, he by deed of *Jan.* 2, 1830, conveyed all his interest in the premises to *Gleason* and *Cole,* who, at *Wheaton's* request, and in secret trust for him, conveyed the same premises to *Prince, May* 22, 1830, taking up their obligation to reconvey, upon *Prince's* paying to the bank the above mentioned balance; that no other consideration was paid by *Prince,* though the stores were worth twenty-five hundred dollars;—and that *Prince* entered into possession of the stores, and has continued ever since to receive the rents. There were various other allegations of fraud in the conveyance of other property by *Wheaton* to *Prince,* which were satisfactorily repelled by his answer, and were thereupon abandoned by the plaintiffs.

On the 10th of *Nov.* 1831, the plaintiffs filed an amendment to the bill, as of the *September* term preceding; in which they alleged that *Wheaton,* having a demand against divers persons to whom he had conveyed certain vessels, and which being under arbitration, was confided to the agency of *Cole,* drew an order on *Cole,* directing him to pay to *Prince* whatever monies he might receive under the award of the arbitrators; by virtue of which order *Prince* afterwards received eight hundred and sixty-seven dollars and thirty-four cents, for which he paid no consideration, and which he still held in secret trust for *Wheaton,* in fraud of his creditors, &c.

The defendants in their answers, admitted the stores to be worth two thousand dollars; and denied all the fraudulent intent charged in the bill. They stated that *Wheaton,* having become involved by the failure of *Healey,* was unable to pay the balance due the *Thomaston* bank, which at that time amounted to four hundred and forty-four dollars and eighty-one cents, and which was paid by *Gleason* and *Cole,* in *August* following, whereby the title to the stores became absolute in them, in equity as well as at law;—that being desirous of realizing the utmost value of his property for the benefit of his own creditors, he requested *Prince* to redeem this estate out of the hands of *Gleason* and *Cole,* if they would consent, and take a conveyance to himself for *Wheaton's* benefit;— that they refused to convey unless *Prince* would not only refund the amount which they had paid to the bank, but would also pay certain other debts due from *Wheaton* to the bank and to individuals, for which they stood liable as his indorsers, which were in suit, secured by attachments on other portions of his real estate, amounting to about nine hundred and fifty dollars; which he accordingly bought up, and ultimately satisfied by extents upon the real estate attached;—that upon payment of these monies *Gleason* and *Cole* conveyed the stores to *Prince* in fee; which, by agreement between him and *Wheaton,* he was to hold as his own property, and pay such of *Wheaton's* debts as might afterwards be agreed on;—that he had accordingly paid such other debts to the amount of four hundred and sixty dollars, for which he had no other security but the stores; and had incurred certain liabilities to the amount of about five hundred dollars, which were pending in law;—and that he had given no writing to *Wheaton,* relating to the property, &c.

As to the money mentioned in the amendment, as having been received from *Cole,* they answered that it was attached in *Cole's* hands, as the trustee of *Wheaton,* in certain suits, which were contested; that *Cole* refused to pay it over unless indemnified; that *Prince* thereupon entered into an obligation to indemnify *Cole,* and received the money from him; which, on the same day, viz. *Sept.*

26, 1831, he paid over to *Wheaton,* who afterwards applied the same to the payment of his own just debts.

The cause was set down for argument upon the bill and answer.

*Allen,* for the plaintiffs, to show that the case was within the jurisdiction of the court, cited 1 *Mad. ch.* 168, 169 ; *Mountfort v. Taylor,* 6 *Ves.* 792 ; *Hadden v. Spader,* 20 *Johns.* 554, 572 ; *Spader v. Davis,* 5 *Johns. ch.* 280 ; *Hendricks v. Robinson,* 2 *Johns.* 283 ; *Brinkerhoff v. Brown,* 4 *Johns. ch.* 671 ; *Williams v. Brown, ib.* 682 ; *McDermutt v. Strong, ib.* 687. That the inadequacy of price was sufficient proof of fraud ; 1 *Mad. ch.* 213, 214 ; *Franklin v. Osgood,* 14 *Johns.* 548 ; *Rogers v. Cruger,* 7 *Johns.* 607 ; *Hildreth v. Sands,* 2 *Johns. ch.* 35 ; *Sherwood v. Sutton,* 5 *Mason,* 144. And that the statute of frauds was no bar ; especially if not expressly insisted upon in the answer. 1 *Mad. ch.* 305 ; *Booth v. Jackson,* 6 *Ves.* 37 ; *Moor v. Edwards,* 4 *Ves.* 24 ; *Whitchurch v. Bevis,* 2 *Bro. ch. ca.* 559. If here was no fraud, then *Prince* has a lien for all his payments. But if there was, he has none. *Sands v. Codwise,* 4 *Johns. ch.* 563 ; *Boyd v. Dunlap,* 1 *Johns. ch.* 478 ; 7 *Johns. ch.* 756 ; *Ripley v. Severance,* 6 *Pick.* 474 ; *Roberts on frauds,* 102, 103 ; *Harris v. Knickerbacker,* 5 *Wend.* 638 ; *Sherwood v. Marwick,* 3 *Greenl.* 295 ; *Clark v. Foxcroft,* 7 *Greenl.* 348 ; *James v. Johnson,* 6 *Johns. ch.* 417 ; 3 *Stark. Ev.* 1009, *note.* *Livingston v. Byrne,* 11 *Johns.* 554.

*Greenleaf,* for the defendants, argued that inadequacy of price was no ground on which creditors could set aside a conveyance, unless it was so gross as to afford evidence of actual fraud and covin. 7 *Johns.* 607 ; 1 *Mad. ch.* 267, 268 ; *Newland on Contr.* 357—359 ; 1 *Dane's Abr.* 664. To the point that it was not necessary that the statute of frauds should be pleaded ; and that this defence was sufficiently set up in the answer ; he cited *Mitford's Plead.* 216, 217, 249 ; *Cooth v. Jackson,* 6 *Ves.* 12 ; *Harris v. Knickerbacker,* 5 *Wend.* 638. *Chancery Rules,* 14. As to the stores, the title was absolutely and legally conveyed from

*Wheaton* to *Gleason* and *Cole*. *Reed v. Woodman*, 4 *Greenl.* 400. *Prince* bought of them, paying all they demanded. His act in taking the property, did not put it out of the reach of *Wheaton's* creditors, for it was already beyond their control. And his verbal promise, to allow something to *Wheaton*, was a mere benevolence, and raised no trust in his favor. *Blagden v. Bradbear*, 12 *Ves.* 466 ; *Rowe v. Teed*, 15 *Ves.* 375. In the absence of actual fraud, which is totally denied in the answer, and is not contradict-ed, the plaintiffs can only put themselves in the place of *Wheaton*, who could claim nothing of *Prince*, for he has sold him nothing. They might as well have claimed the land against *Gleason* and *Cole*. *Prince* bought the land of them for the price they required. If this was less than its value, and he is disposed to allow some-thing more to the former proprietor, no creditor, it is insisted, has a right to step between him and the object of his private bounty.

The opinion of the Court was read at the following *September* term, as drawn up by

MELLEN C. J. This cause comes before us upon bill and an-swer. The plaintiffs have abandoned a part of the charges in the bill ; and the attention of counsel has been confined to two partic-ulars only. 1st. The nature of the conveyances of the two stores and the land connected with them, and of the title of *Prince* under those conveyances. 2d. The receipt of eight hundred and sixty-seven dollars and thirty-four cents, of *Cole* by *Prince*, belonging to *Wheaton*. As the deed of *June*, 1827, executed by *Wheaton* to *Gleason, Healey* and *Cole* was absolute, it conveyed the fee to them absolutely ; inasmuch as the contract on their part to recon-vey was not under seal and did not constitute a defeasance. *Kel-leran v. Brown*, 4 *Mass.* 443. This deed is liable to no impeach-ment. It was sustained by a legal consideration, and was execut-ed more than two years before *Wheaton* became indebted to the plaintiffs, or was embarrassed in his circumstances in consequence of the failure of *Healey* in *December* 1829. The title having thus been conveyed from *Wheaton*, the question is whether the legal or

equitable title has since been vested in him. Prior to *January* 2, 1830, *Healey* had conveyed all his right and title in the premises to *Gleason* and *Cole*; and on that day there was due on the note given to the bank, nearly four hundred and fifty dollars, *Wheaton* having by several payments reduced the original amount of the note to the above sum. *Wheaton*, being unable to pay that balance, requested *Prince* to redeem the same property from the hands of *Gleason* and *Cole*, by paying the amount of the above sum, and taking a conveyance to himself for *Wheaton's* benefit; he being desirous to realize the utmost value of all his property for the benefit of his creditors; both *Prince* and *Wheaton* then considering the property to be worth two thousand dollars, and not more than that sum. *Gleason* and *Cole* were unwilling to make the conveyance, unless *Prince* would assume and pay two debts, amounting to nine hundred and forty-eight dollars and seventy-nine cents, for the payment of which *Gleason* and *Cole* stood responsible as sureties for *Wheaton*. Accordingly, the above sums having been paid, *Gleason* and *Cole*, in *August*, 1830, conveyed the same stores in common form to *Prince*, to hold to him and his heirs. The consideration is stated in the deed to have been received of *Prince*. Since the deed was given, and before the bill was filed, *Prince* paid four hundred and sixty dollars on account of other debts due from *Wheaton*, pursuant to a verbal agreement, made at the time the deed was executed, that the property was to be held by *Prince* as his own, and that he should pay such debts as should afterwards be agreed upon. No other sums than those above named, appear to have been paid by *Prince*. There was no writing given by *Prince* to *Wheaton* relating to the stores. Every allegation in the bill as to a combination, or any fraud or collusion between the respondents, is distinctly denied by the answer. Still it is contended that, on the face of the answer, the transaction, as presented to the court, is of such a character that the deed cannot be considered in any other light than as conveying to *Wheaton* an equitable interest by way of resulting trust. On this principle only can the bill be maintained, as to the stores. Where a deed is made

to *A.* and it is stated in the deed that the consideration was paid by *B.*, a trust results to *B.* and no parol evidence is necessary to prove it; but where it does not appear on the deed that *B.* paid the consideration, the authorities are at variance on the question whether the payment by him can be proved by parol. The learned Mr. *Dane*, in his Abridgment, *vol.* 4th, 265, has collected a large number of cases on each side of the question, and then observes: " After all the various opinions on the point, if *A.* take a deed of land to himself, and it is expressly stated in it that the purchase money is his, and there is no evidence in it, that it is another's, *B's*, for instance, and there is no evidence of fraud or mistake, there can be no resulting trust; for to admit parol evidence to prove the purchase money is *B's*, is to admit it to prove it is not *A's*, directly against the deed, which says it is his." Mr. Justice *Story* in *Powell & al. in equity v. Monson and Brimfield Manufactory*, 3 *Mason*, 347, seems to make no distinction between the cases where the parol proof is inconsistent with the statement in the deed and where it is not. He also observes, " the general principle has long been settled in equity, that if one person purchase land in the name of another, the latter, the deed being taken in his name, shall, without any declaration in writing, be held the trustee of the former. The ground of this doctrine is, that he who pays the consideration is to be deemed the owner in equity. But the point whether proof of such a purchase could be made out *aliunde* the deed or other written evidence; or in other words, whether parol evidence is admissible to establish the manner of paying the purchase money, has been involved in some doubt; but the more recent decisions have gradually settled in its favor. On the present occasion I have examined the subject at large—the result of that examination is that the question is no longer fairly open to debate. I should have gone somewhat into a commentary on the leading cases, if that excellent and laborious Judge, Mr. Chancellor *Kent*, had not in *Boyd v. McLean*, 1 *Johns. Ch.* 582, and *Botsford v. Burr*, 2 *Johns. Ch.* 405, collected and reviewed them." A multitude of cases are cited by him and also by Chancellor *Kent*

to support their decisions. *Story J.* does not seem to consider proof of fraud as a necessary preliminary in establishing a resulting trust. However, if such was the idea intended to be conveyed by the learned Judge in the above quotation, we would observe that, without expressing any assent to, or dissent from the doctrine, in the present case, constructive fraud is relied upon as appearing on the answer, from the facts it discloses, notwithstanding the general denial of fraud. In *Hadden v. Spader*, 20 *Johns.* 554, *Platt J.* observes : "the defendant denies that there is any fraudulent combination to delay or defraud creditors, but in the same answer he admits a series of facts from which both law and equity impute fraud." So in *Hendricks v. Robertson*, 2 *Johns. Ch.* 283, the court say the purchaser and the vendors say that this was an honest and *bona fide* transaction ; but do not the facts they admit, outweigh the declaration ? All circumstances must be considered." In the case before us, does it not appear from the answer that, though by the deed, it is stated that the consideration was paid by *Prince*, still it was in reality paid out of *Wheaton's* funds, that is, out of the very property which *Wheaton* requested *Gleason* and *Cole* to convey to *Prince* for *Wheaton's* benefit ? This fact, however, was concealed from public view ; for no writing on record or in existence, nor the deed itself, gave third persons any knowledge of the circumstance. It has been called forth by the interrogations in the bill. The inquiry is natural, why were they concealed ? At the time the deed was given, *Prince* paid only the sum due to the bank, say four hundred and forty-four dollars and eighty-one cents, and the two sums beforenamed, amounting to nine hundred and forty-eight dollars and seventy-nine cents ; but these two sums were soon after reimbursed by a conveyance of the lands on which the executions of those creditors had been extended. So that the only consideration paid, when the deed was executed, turns out to be four hundred and forty-four dollars and eighty-one cents; and the property is admitted to be worth two thousand dollars.. It is true there was a verbal engagement to pay such other debts, " as might afterwards be agreed on," and he says he paid other debts amount-

ing to four hundred and sixty dollars. Even this parol agreement, void by law, did not bind him to pay any thing more than he had paid; and, even if the promise had been binding, it was only to pay such other debts as might afterwards be agreed upon; that is, it was a promise to pay such sum or sums as he might incline to pay at some future time. *Prince* in his answer says he has no other security for the four hundred and sixty dollars he paid, but the stores. Here is a confession that he does not hold the property as his own, but as security for payments made on account of *Wheaton.* Whether *Prince* has ever suffered any loss or been compelled to pay any thing in consequence of his liabilities, to the amount of about five hundred dollars mentioned in his answer, does not appear. If we were now trying the question whether the deed was void as against the creditors of *Gleason* and *Cole*, we should consider this inadequacy of consideration as a strong circumstance impeaching the validity of the conveyance; as being inconsistent with the usual character of *bona fide* transactions. For the same reason we consider this inadequacy, in connexion with some other particulars which we have noticed, as marking the transaction as one where a friendly, but in legal contemplation, a fraudulent, understanding subsisted between *Wheaton* and *Prince*, and proving a resulting trust in favor of *Wheaton*, in respect to all the property; beyond what *Prince* has paid on account of his debts since the conveyance. Considering *Prince*, as we do, as holding the title to the premises in trust for *Wheaton* or rather for his creditors, we see no reason in equity why he should not be allowed all payments properly made by him to creditors in consequence and in consideration of the premises conveyed to him, and for his agency and services respecting the property, deducting all rents and profits received by him up to the time of a final decree.

Before proceeding to the consideration of the second question we would observe that when we pronounce the transaction between the defendants, in respect to the conveyance from *Gleason* and *Cole* as fraudulent, we do not mean to insinuate that there was any moral turpitude on the part of *Prince*; nor do we believe there was

any; but though the motives of a party may be good in such a transaction, still, where the design, if sanctioned would defeat or delay creditors and thus impair their rights, neither law nor equity can sanction the proceeding; and on that account it is termed a legal fraud, or a fraud upon the law; hence a trust legally results from the facts stated and admitted in the answer, under the hands of the defendants.

With respect to the sum of eight hundred and sixty-seven dollars and thirty-four cents, with which the plaintiffs seek to charge the respondent, *Prince,* there can be no ground for its allowance. In the original bill no claim was made for the above sum. At *September* term, 1831, the bill was amended so as to embrace this subject and assert this claim for the money as then being in the hands of *Prince* by means of a fraudulent arrangement with *Wheaton,* but it is admitted in argument that no notice of the above mentioned amendment was given to either of the respondents, or to their attorney, until the 19th of *November* following; which was between two and three months after the money had been paid over to *Wheaton,* to whom it belonged; *Prince* having acted in the receipt and payment over of the money, merely as the agent of *Wheaton.* Why should he be compelled to pay it again, on any principle of justice? *Brinkerhoff v. Brown,* 4 *Johns. Ch.* 671; *McDermott v. Strong, ib.* 687; *Spader v. Davis,* 5 *Johns. Ch.* 283.

If the deed had been fraudulent as between *Prince* and his grantors, it would have been a mere nullity, as it respects the creditors of those grantors; but completely to destroy the effect of the deed in that or any other manner, would at once defeat the bill; because the plaintiffs are not the creditors of those grantors, but of *Wheaton.* But by showing the secret understanding between *Prince* and *Wheaton,* a resulting trust is established for the benefit of *Wheaton,* of which the plaintiffs may rightfully avail themselves. For the reasons above assigned, the bill, as to all the charges it contains, excepting that which relates to the two stores, and the land connected with them, is hereby dismissed. And as to that part of the bill, it is ordered that said *Prince* render an account of

all payments made on account of said *Wheaton's* debts, since said deed was made to him and prior to filing of the bill, and of his services and expenses in the management of said property, and of the value of said property, and of all rents and profits received up to the time of rendering such an account; the same to be rendered to a master, who is to be appointed to hear and investigate the same, and state an account, as by him allowed, to this court.