PEET VS. CHICAGO AND NORTH-WESTERN RAILWAY COMPANY.

A railway company whose southern terminus was Chicago, Ill., received flour at its depot at Neenah, in this state, directed to the care of J. H. & Co., New York, and of C. S. T., general agent, Chicago, and gave the following bill of lading: Chicago, Jan. 16, 1862. Received (as agents and forwarders) from E. W. P. the following packages, * * * One hundred barrels flour * * *Contract from Neenah to New York at $2.25 per barrel. J. H. S,, Agent." The words in parenthesis were printed, and those in Italics written. Held, that the contract was to deliver the flour at New York for a fixed compensation, and the company was liable as a common carrier for the whole route. DOWNER, J. dissented.

Whether the company would have been liable in the absence of any such special contract, it was not necessary to decide in this case.

APPEAL from the Circuit Court for Winnebago County.

The complaint in this action contained seven counts, the first five being for damages (amounting in the aggregate to $256) for the defendant's neglect as a common carrier, in failing to deliver at New York city, within a reasonable time, five several consignments of flour. The form of the contracts be-

tween the parties is given in the opinion of the court. The sixth and seventh counts were for over-charges on freight, alleging damages amounting in the aggregate to $15.99, and interest thereon.

It appears from the evidence that the consignees of the flour in New York were obliged to pay the Hudson River Railroad company, as freight on the same, an aggregate of $1140.99 (being $15.99 more than the price fixed in the contract with defendant), before said company would deliver the flour. There was evidence tending to show delay in transporting the flour from Chicago to New York, and damages resulting therefrom as alleged in the complaint.

The following instructions (among others) were given by the court, and excepted to by the plaintiff: 1. It was competent for the defendant, although a common carrier, to contract in other capacities. 2. The receipts in this case were given as therein represented, in the capacities of agents and forwarders. 3. The defendant's liability as carrier arises not from the receipt, but from the fact that the flour was to be transported for a portion of the distance from Neenah to New York over the defendant's own line of road. 4. Such liability as carrier ceased at Chicago, the end of defendant's route, or southern terminus of its road, where it became a forwarder. 5. If the flour was transported from Neenah to Chicago within a reasonable time, and was duly forwarded from there within a reasonable time, by one of the usual routes, the defendant is not liable for any delays in the transportation of said flour occurring after it was so forwarded from Chicago.

Verdict for the plaintiff, assessing his damages at $17.21, being the amount claimed for over-charges, and interest; and judgment accordingly; from which the plaintiff appealed.

*Moses Hooper*, for appellant:

In England a railway company receiving goods marked with the name of a certain place on any line of road connecting with theirs, is liable for the negligence of any company into

whose hands it may go on the way to its destination. *Muschamp v. L. & P. Railway*, 8 Mees. and Wels., 421; *Scothorn v. So. Staf. Railway*, 8 Welsby, H. & G., 346. As to the American doctrine see 1 Parsons on Con., pp. 686–89, and note K., and cases there cited; *Foy v. T. & B. R. R. Co.*, 24 Barb., 382. If the price of carriage had been paid by the plaintiff, there could be no question that the defendant would be bound to carry to New York, and would be liable for delay of freight between Chicago and New York. 19 Wend., 329, 332, 536–7; opinion of Ch. WALWORTH, 6 Hill, 158, 161. What rights could we acquire by paying in advance, that we did not acquire by promising to pay, and fulfilling our promise? 2. There was a special contract by defendant, which, written out in full, would read, " We contract to carry this 100 bbls. of flour from Neenah to New York, and there deliver it to the consignees for a compensation of $2.25 per barrel." It is contended that the words should rather be construed ·to mean that ·the company guarantied that the freight charges of all the companies between Neenah and New York should not exceed $2.25 per barrel. The natural words to express such a contract would be, "Freight from Neenah to New York not to exceed $2.25." The words used do not import that the freight shall not exceed $2.25, but that it shall be exactly that sum. The construction contended for by defendant is strained and unnatural. If the words " received (as agents and forwarders)" &c., relieve the defendant from liability as a carrier at all, they relieve him from liability as a carrier from Neenah to Chicago, as well as for the rest of the route to New York. The court below explained that " the defendant's liability as carrier arose from the fact that the flour was to be transported for a portion of the distance over its own line of road;" but where does the court get this idea? Give to the clause " contract from Neenah to New York" any other meaning than that for which we contend, and what is there binding defendant as carrier at any point? The term " agents and forwarders" does not necessarily mean

shippers, but may be used to designate carriers, and such is their natural meaning here, taking the whole contract together. *Wilcox v. Parmelee*, 3 Sandf., 610; *Blossom v. Griffin*, 13 N. Y., 569. But even if these words were not properly applicable to carriers, the written portions of the contract must prevail over the printed portions. 1 Greenl. Ev., § 278; 12 Wend., 573; 17 N. Y., 194. Where the intention is doubtful, the language of a contract must be taken most strongly against the party using it. *Marvin v. Stone*, 2 Cow., 781. If any construction is placed upon this contract other than that for which we contend, it must be that respondent received this flour at Neenah as carrier to Chicago, and thence became shipper to New York, and was also, during all the time, guarantor of the price of carriage. Can these *three* contracts be drawn, by any reasonable construction, from this bill of lading ?

*Bouck & Edmonds*, for respondents, to the point that the respondent was not liable as a carrier (unless made so by express contract) beyond Chicago, the southern terminus of its own road, cited *Jenneson v. Camden and Amb. R. R.*, in District Court, Philadelphia, 4 Am. Law Reg., 234 ; *Farmers' and Mech. Bk. v. Ch. Transp. Co.*, 23 Vt., 186, 209 ; *Van Santvoord v. St. John*, 6 Hill, 157 ; *Wright v. Boughton*, 22 Barb., 561 ; *Hemstead v. N. Y. Central R. R. Co.*, 28 id., 485 ; *Nutting v. Conn. River R. R. Co.*, 1 Gray, 502 ; *Elmore v. Naug. R. R. Co.*, 23 Conn., 457 ; *Rome R. R. Co. v. Sullivan*, 25 Ga., 228. So far as the receipts in this case are concerned, they are without any words of carriage or delivery. There is no agreement *expressed* in them to deliver at New York. The memorandum at the bottom, " contract from Neenah" &c., we insist was intended simply to fix the *price* of carriage. All authorities agree that carriers may contract as forwarders and agents of connecting carriers, without incurring any liability beyond their own route. Ang. on Carriers, secs. 96, 97, and cases there cited. The only conflict is as to the necessity of an express stipulation in favor of the carrier. We have it in these

receipts.   The statement in them that they are given by defendants " as agents and forwarders" is sufficient *prima facie* to establish that point.   Not a case can be shown, English or American, where a receipt in this form, or in substance like these, has been held *of itself* to render the carrier liable beyond his own route.   There are cases where an " entire compensation," either fixed or received at the commencement of the route, has been considered, in connection with other circumstances, as evidence of such a " connection in business" between the several lines, as to make the first carrier liable for the whole route (19 Wend., 534; 4 Seld., 37 ; 3 Sandf., 610 ; 1 Hill, 223) ; but in all these there have been *other circumstances* tending to show either a partnership *inter sese* or an express contract to deliver, but expressed in language requiring the aid of surrounding circumstances, such as " entire compensation" &c., in the interpretation.

*By the Court*, COLE, J.   The main object of this action is, to recover damages against the railroad company for delay in carrying a certain quantity of flour to New York city.   The appellant is a manufacturer of flour at Neenah, Wisconsin, and delivered to the company at that place the flour, taking therefor a receipt or contract which reads as follows :

" Chicago & Northwestern Railway, Charles S. Tappan, general freight agent, Chicago, January 16th, 1862.   Received (as agents and forwarders) from E. W. Peet, the following packages (contents unknown) in apparent good order, viz : Marked—Acct. of Bank of Neenah, care of Jesse Hoyt & Co., New York.   Care of Chas. S. Tappan, Gen. Agent, Chicago. Articles—One hundred barrels flour, round hoop, Harmony mills.   *Contract from Neenah to New York at $2.25 per bbl.* J. H. Smith, agent."

It appears from the evidence and stipulations filed in the case, that the flour was transported by the company over its line of road from Neenah to its terminus at Chicago, and was

forwarded from there by the company within a reasonable time by one of the usual routes, but failed to reach its destination in time in consequence of the accumulation of freight at a point east of Chicago. And the only question which we shall consider is, whether the company discharged its liability when it transported the flour over its road to Chicago and forwarded it from that place within a reasonable time by one of the usual routes, or whether the above receipt shows an express contract on the part of the company to carry the flour to New York. The court below held that the obligation imposed by the contract was merely to transport the flour safely and seasonably to the city of Chicago, the end of defendant's road, and there deliver it to a proper carrier to be forwarded to its destination; and that when the company had done this it had discharged its full duty in the premises.

There is considerable conflict of authority upon the point as to what measure of responsibility a railroad company assumes which receives goods marked to some place beyond its route. The English courts have decided that when a railway company take into their care a parcel directed to a particular place, and do not by positive agreement limit their responsibility to a part only of the distance, that is *prima facie* evidence of an undertaking to carry the parcel to the place to which it is directed, although that place be beyond the route of the company. The weight of American authority is certainly opposed to this doctrine, holding that the company which receives the goods assumes no responsibility as carrier beyond the terminus of its road unless there is a special contract, or some usage of business which shows that such company takes the goods for the whole route. Most of the cases upon this branch of law will be found in note (K), 1 Parsons on Con., p. 687 (4th ed.). See likewise *Rome Railroad Co. v. Sullivan et al.*, 25 Geo., 228. It is believed, however, that a discussion of the question as to which is the more salutary and reasonable rule upon this subject is not necessary for the purposes of this

case, since the authorities are quite uniform that if the company receiving the goods contract as carrier for the whole line, then it is liable for any injury or loss that may happen to them beyond the limits of its road and while under the control of other carriers. And a majority of the court think that the receipt in this case contains an express undertaking on the part of the defendant to carry the flour beyond the terminus of its road to its destination, New York city. It will be seen that the receipt contains these words: " *Contract from Neenah to New York at $2.25 per bbl.*" We fully adopt the interpretation placed upon these words by the counsel for the appellant, and think if the contract were written out in full it would read : " The railway company contracts to carry this 100 bbls. of flour from Neenah to New York, and there deliver them to the consignees, for $2.25 per barrel." It seems to a majority of the court that this is the natural and reasonable construction to be placed upon these words, and that they show an express undertaking on the part of the defendant to carry the flour to New York. If so, there can be no doubt that the company is liable for any loss occasioned by negligence and inexcusable delay in transporting the flour to its destination, in whatever part of the line it may have occurred. *Noyes v. R. & B. R. Co.*, 27 Vermont, 110 ; *Wilcox v. Parmelee*, 3 Sandf. (S. C.), 610 ; *Perkins v. P. S. & Portsmouth R. R. Co.*, 47 Maine, 573 ; *Penn. Cent. R.R. Co. v. Schwarzenberger*, 45 Pa. St., 208.

It is claimed, however, that this construction of this language is inadmissible, and that it was used merely for the purpose of fixing the freight charges of all the companies between Neenah and New York, so that in no event should they exceed $2.25 per barrel, and that this intention is the more evident from the words "received (as agents and forwarders)," which are used in the first part of the receipt. The counsel for the appellant forcibly presented the obvious difficulties in the way of adopting this construction of the receipt. He suggests that if the intention was to fix the price of transportation

to New York, the natural and proper words would have been: "freight from Neenah to New York not to exceed $2.25 per barrel." But instead of this the freight is fixed at a given amount, and then a meaning has to be given the language different from what it imports simply on its face. Furthermore, if this theory is correct and such controlling effect is given to the first clause of the receipt, "received (as agents and forwarders)," then it would relieve the company from all liability as carriers, and impose upon it merely the duty of forwarder from Neenah. And finally, the first part of the receipt is printed, while the words "contract from Neenah to New York at $2.25 per bbl.," are written, and therefore the written portion must prevail over the printed part, if there is any conflict in the language. No satisfactory answer was given to these objections, and they show that the exposition of the receipt contended for by the counsel for the company is not a fair and legitimate one. We think the more natural and rational construction is, that the receipt contains an express undertaking on the part of the company to transport the flour to New York, and imposes upon it the responsibility of a carrier for the whole route.

We think, therefore, there must be a new trial. Of course we shall not be understood as expressing any opinion upon the other points made upon the briefs of counsel.

Judgment of the circuit court reversed, and a new trial ordered.

DOWNER, J. I dissent from the opinion of the majority of the court in this case, and hold:

1st. That the receipt or contract in evidence, taken in connection with the evidence at the trial, is not a contract on the part of the defendant as common carrier to carry the flour from Neenah to New York.

2d. That the defendant undertook only to transport the flour to Chicago, the terminus of its own road, and there to

forward it, and to fix the freight which should be charged by all the roads from Neenah to New York.

3d. That, unless the defendant has greater powers than are ordinarily conferred on railroad corporations, it had not the power to make a valid contract, binding it as a common carrier to transport goods from Neenah to the city of New York. And on this point I refer to the dissenting opinion of SUTHERLAND, J., in the case of *Burtis v. The Buffalo and S. Line R. R. Co.*, 24 N. Y. (10 Smith), 274, and authorities there cited.