Cook v. Burnham.

COOK BROS. & CO. v. BURNHAM, HANNA, MUNGER & CO.

### No. 92.

1. ATTACHMENT—*Affidavit*—*Ground.* An affidavit for attachment may state disjunctively different phases of the same fact which is alleged as a ground for attachment.

2. INSOLVENT DEBTOR— *Conveyance, When Deemed Fraudulent.* When an insolvent debtor makes a disposition of his property which the law inhibits as against creditors, and which naturally and necessarily tends to hinder, delay or defraud creditors, it is conclusively presumed that he intended his act should have that effect; and it is such a fraudulent conveyance as will sustain an attachment at the suit of a creditor, even though there may not have been any actually corrupt motive or dishonest purpose.

3. OPEN ACCOUNT—*Proof.* To relieve the plaintiff of the necessity of proving an open account, as against a general denial of the defendant, there must not only be a copy of the account, properly verified, attached to the petition, but the petition must allege the *correctness* of such verified account.

MEMORANDUM.— Error from Shawnee district court; JOHN GUTHRIE, judge; Action by Burnham, Hanna, Munger & Co. against Cook Bros. & Co., in which an attachment was issued. There was an order overruling a motion to discharge the attachment, and a judgment for plaintiffs. Defendants bring the case to this court. Order affirmed, and judgment reversed. The opinion herein, filed April 1, 1896, states the material facts.

*J. G. Waters,* and *E. F. Hilton,* for plaintiffs in error.

*Rossington, Smith & Dallas,* and *Clifford Histed,* for defendants in error.

The opinion of the court was delivered by

GARVER, J.: October 10, 1891, the defendants in error, as plaintiffs, instituted this action against the plaintiffs in error for the recovery of money alleged

to be owing, but not due, on a note and open account. At the commencement of the action an attachment was duly allowed, issued, and levied upon certain property of defendants below. Thereafter, on a hearing had, the defendants' motion to dissolve the attachment was overruled, and a judgment subsequently rendered for the amount of the plaintiffs' claim. The overruling of the motion to discharge the attachment and the rendition of final judgment upon the evidence are assigned for error.

It is contended that the attachment should have been discharged for two reasons : First, because the grounds for attachment were stated disjunctively in the affidavit for attachment; and, second, because the grounds stated were untrue. The portion of the affidavit to which the objection goes reads as follows :

"Said defendant debtors have sold, conveyed or otherwise disposed of their property with the fraudulent intent to cheat or defraud their creditors, and to hinder and delay them in the collection of their debts."

Does the use in this affidavit of the disjunctive "or" instead of the conjunctive "and" invalidate the attachment? We think not. Doubtless it is better practice, when practicable, to avoid, in legal proceedings, the use of all alternative statements. Certainty and directness should be aimed at, and should ordinarily be required. Here, however, only one ground for attachment is laid. Where an affidavit charges the fraudulent disposal of property and the absconding of the defendant, or where an attachment is asked on the grounds that the defendant was about to dispose of his property with the intent to defraud creditors, and had fraudulently contracted the debt, or other incongruous grounds are relied upon, the dis-

tinct facts cannot be stated disjunctively.    But when, as in this case, the alleged fraudulent act is limited to the disposition, by the defendant, of his property, it cannot be said that a charge is objectionable simply because it fails to state definitely the particular manner of such disposal.    While the words "sold," "conveyed" and "disposed of" are not necessarily synonymous, they often may be used properly to describe the same transaction.    The rule is thus stated by Mr. Drake:

"Where the disjunctive 'or' is used, not to connect two distinct facts of different natures, but to characterize and include two or more phases of the same fact, attended with the same results, the construction just mentioned [that distinct grounds should not be stated disjunctively] would be inapplicable.    For instance, where the statute authorized an attachment when 'the defendant absconds or secretes himself,' it was considered that, from the difficulty of determining which was the fact, the language comprised but one ground, and the disjunctive 'or' did not render the affidavit uncertain."    (Drake, Attach., § 102.)

See, also, *Parsons v. Stockbridge*, 42 Ind. 121; *Klenk v. Schwalm*, 19 Wis. 124; *Russell v. Ralph*, 53 id. 328; *McCraw v. Welch*, 2 Colo. 284; *Jones v. Peek*, 101 Mich. 389; *Conrad v. McGee*, 9 Yerg. 428; *Dawley v. Sherwin*, 59 N. W. Rep. (S. D.) 1027.

It is next urged that, under the evidence introduced on the hearing of the motion, the attachment should have been discharged.    This contention demands an examination of the evidence; and, as it was, for the most part, presented to the trial court by affidavit or deposition, this court may look into it more critically than where a decision rests upon the oral examination of witnesses.    The plaintiffs in error were engaged in a mercantile business in the city of Topeka on, and for some time prior to, October 8, 1891.    On that date

they executed two mortgages—one to Lucinda Case, the mother of one of the firm, for $2,557.33; and one to Henry W. King & Co., for $1,426.11; and, at substantially the same time, executed a deed of general assignment for the benefit of creditors. The mortgages and deed of assignment embraced all the property of plaintiffs in error, the same consisting of their stock of goods. The mortgage to Lucinda Case was executed at her request; that to King & Co. was purely voluntary, its execution probably being unknown to them until after the levy of the attachment. On the same day, and within a few hours after the mortgages were drawn, possession of the stock of goods was given to G. J. Case, husband of Lucinda Case, as agent for both mortgagees, and the business was thereafter conducted under his direction and control until the attachment was made. Without expressing any opinion, as to the validity of the Case mortgage, we are clearly of the opinion that the King mortgage was, under the circumstances shown by the evidence, an attempted unlawful disposition of property, and therefore void. These debtors had reached a point where they had determined to turn over all their property voluntarily for the benefit of their creditors. Such purpose can be legally effected through an assignment only by such disposition as will result in the equal benefit of all. (Gen. Stat. 1889, ¶ 342.) So long as a debtor retains the absolute control of his property, he may use it along any legal lines. In the absence of creditors, he may give it away without adequate consideration, or he may destroy it, without being answerable to any one. But when the rights of creditors are involved, this liberty of action ceases. Then the owner's dominion over his property must be exercised

fairly and honestly, so that no injustice be done those who have a right to look to it for payment. One creditor cannot justly claim that another had been preferred, if such preference be accomplished by lawful means. But no preference can be given through, or in connection with, a general assignment for the benefit of creditors; and a mortgage executed for that purpose, at substantially the same time at which a deed of assignment is made, and as part of the same transaction, is void. (*Hardware Co. v. Implement Co.*, 47 Kan. 425; *Goodman v. Kendall*, 56 id. 439, 43 Pac. Rep. 687.) If nothing be done under such a void mortgage, it may not be entitled to much weight as evidence of an unlawful transfer of property. But when, in connection with it, there is an actual changing of possession and control, other considerations arise. Then there is an actual transfer of the property, the natural and necessary consequence of which is to place obstacles in the way of creditors, and to hinder and delay or defraud them in the collection of their claims. The law conclusively presumes that such consequences were intended. Being intended through the doing of a voluntary act, which is, under the circumstances, unlawful, the law condemns the act as fraudulent.

Law writers and courts have said much about fraud in law as distinguished from fraud in fact, creating no little confusion often by the different meanings attached to the terms, and giving rise to at least apparent inconsistencies in decisions. But, in most cases, any differences of opinion are more seeming than real. It is of little importance whether it be said that a certain transaction is a fraud in law, or whether, as is probably more nearly correct, it be simply held, when when viewed under the law, to be conclusive evidence

of a fraudulent intent.   Fraud in fact, as generally understood, is the actual existence of a wicked purpose or motive.   In the one case, the court judges of the intent from an act which it is not lawful to do, and whose natural and necessary consequence is to hinder, delay or defraud creditors—the secret intention, or moral quality of the act, not being considered.   It is conclusively presumed that this natural and necessary consequence was intended; and, being intended, the law declares the act to be fraudulent.   In the other case, the act is clothed outwardly with legal approval; but at heart it is vicious, is inspired by wrongful motives, and aims at the accomplishment of ends which the law condemns.   In the one case, the act itself and its consequences control the judgment of the court; in the other, it is a question of motive and purpose in the doer.   In either case, the judgment of the court is demanded upon the facts proven.

In determining the character of a disposal of property, as between a debtor and his creditors, the principal thing to be considered is its actual or intended effect upon the creditors.   The law does not lend its aid to the creditor in setting aside a fraudulent conveyance, or in permitting the seizure of property before judgment by legal process, as a punishment to the debtor, or on any mere sentimental or moral grounds.   It does so solely for the protection of the creditor, and to prevent, as far as possible, the debtor's property from being placed beyond the former's reach, except for lawful purposes.   To this end it is of little consequence, as affecting the legal rights of the creditor, what motives enter into any transaction. It is the *act* of his debtor which he may justly complain of because of injurious effects which are not dependent on motive.   Considerations of love or affec-

tion, of benevolence or charity, however worthy in themselves, count for nothing; nor do they afford legal justification for the doing of that which renders it impossible for one to discharge prior legal obligations. The law condemns every such transaction, because in itself it operates as a wrong and a fraud upon legal rights. So, in this case, the controlling question is not as to motive, or actual intent, as either may appear extrinsically of the transactions complained of. The natural and necessary effect of the void mortgage and possession given under it was to hinder and delay creditors by the placing of unlawful obstacles between them and their debtor's property, and was, in law, a fraudulent transaction, because conclusively presumed to have been so intended. This view, we think, is fully sustained by authority. In *Bentz v. Rockey*, 69 Pa. St. 71, it is said:

"If the law adjudges the effect of an act to be to hinder and defraud creditors, it is to be regarded fraudulent, although this may not have been the intention of the parties. When a transfer is fraudulent in law, it does not matter that it is not fraudulent in fact."

In *Babcock v. Eckler*, 24 N. Y. 623, Sutherland, J., in his opinion, said:

"If the necessary consequence of a conceded transaction was defrauding another, then, as a party must be presumed to have foreseen and intended the necessary consequences of his own act, the transaction itself is conclusive evidence of a fraudulent intent, for a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act. Intent or intention is an emotion or operation of the mind, and can usually be shown only by acts or declarations, and, as acts speak louder than words, if a party does an act which must defraud another, his declaring that he did not by the act in-

tend to defraud is weighed down by the evidence of his own act."

In *Bank v. Talcott*, 19 N. Y. 149, it is stated :

"A distinction is attempted, in some of the cases, between fraud in law and fraud in fact. I think there is no solid foundation for it. When upon the face of the assignment any illegal provision is found, the presumption at once conclusively arises that such illegal object furnished one of the motives for making the assignment; and it is upon this ground adjudged fraudulent and void. The result is the same when the illegal design is established by other evidence. The inquiry is as to the intention of the assignor. When it appears that among the inducements operating upon him there was the intention to violate any of the duties owing by him to any of his creditors, the whole instrument is tainted, and will be set aside at the suit of the creditor."

In *Harman v. Hoskins*, 56 Miss. 142, 145, among other things, the court said:

"A party will be held as 'intending' the natural and inevitable effect of his acts. If his deed necessarily operates to interpose unreasonable hindrance and delay to creditors, or to defeat them altogether, the intent will be a conclusion of law. A deliberate act, which produces naturally and inevitably a certain result, must, in law, be held as contrived and done to carry out and consummate that result. The court, in such a case, arrives at the conclusion, by construction of the instrument, that such is its direct and inevitable effect; and it results, as a matter of law, that the statute is satisfied. Though the act, in a moral view, was entirely fair, suggested by affection, and though the real purpose was to pay all debts, yet if the conveyance be of the character and operation just described, it will not stand against creditors."

In *Lawson v. Funk*, 108 Ill. 502, 507, it is stated :

"The authorities clearly establish two distinct

grounds upon which conveyances and other contracts will be deemed fraudulent as against creditors : First, such as are entered into with a fraudulent intent ; and second, such as, from the terms of the agreement or the nature of the transaction itself, are deemed so as a mere inference of law, without regard to the motives or actual intentions of the contracting parties.   In the first class of cases the fraudulent intent is always a question of fact, to be established by extrinsic proofs. In the latter, the agreement, under the circumstances shown, is deemed fraudulent, although the parties may have acted in the best of faith.''

See, also, *Coleman v. Burr*, 93 N. Y. 17 ; *Hilliard v. Cagle*, 46 Miss. 309 ; *Potter v. McDowell*, 31 Mo. 62 ; *Burgert v. Borchert*, 59 id. 80 ; *Gardiner Bank v. Wheaton*, 8 Me. 373 ; *Norton v. Norton*, 59 Mass. 524 ; *Pope v. Wilson*, 7 Ala. 690 ; *The State v. Estel*, 6 Mo. App. 6 ; *Freeman v. Burnham*, 36 Conn. 469.

We have, at perhaps greater length than necessary, cited and quoted from decisions from other courts, because of a seeming conflict in the views expressed in this opinion with some of the decisions of the supreme court of this state.   In this state, as elsewhere, fraud and fraudulent conveyances of property have been fruitful sources of litigation — the reports abounding in decisions upon the various phases of the question from time to time presented.   The writer of this opinion will not attempt to reconcile all that has been said in this class of cases by the supreme court, nor take the time to distinguish the cases upon the facts and harmonize them on principle.   It is sufficient for our purpose that we are not adopting a rule or principle which has not been heretofore acted upon in this state, even if not with strict uniformity in all cases. The third paragraph of the syllabus in *Gollober v. Martin*, 33 Kan. 252, reads :

''The law presumes that every man intends the

necessary consequence of his acts, and where the conduct of a debtor necessarily results in defrauding his creditors, he is presumed to have foreseen and intended such result."

In *Roberts v. Radcliff*, 35 Kan. 502, JOHNSTON, J., delivering the opinion of the court, said :

"By this transfer all the property of the insolvent debtors was withdrawn from the reach of their creditors, and this, with the long and unusual credit that was given, of necessity had the effect to hinder and delay their creditors. The law presumes that the parties intend the usual and necessary consequences of their acts, and the jury could infer from the terms agreed on and methods employed that the sale was made with the intent to hinder and delay creditors. . . . The creditors are entitled to have the property of the debtor appropriated without delay to the payment of their claims, and a transfer made by the debtor, where the intention or the necessary effect is to delay creditors, cannot be upheld."

In *National Bank v. Croco*, 46 Kan. 629, an attachment was sustained on the ground that the disposition of property made by the debtor was, in law, a fraud upon creditors, though there is nothing to suggest any actual intent to defraud. In *Shellabarger v. Mottin*, 47 Kan. 451, the parties apparently acted in good faith, so far as the mere moral quality of their conduct was concerned, yet the supreme court held that the district court erred in dissolving the attachment. It so held for the reason that the disposal of property was not such as an insolvent debtor could legally make ; that its necessary effect was to defraud creditors; and that, therefore, in law, it was fraudulent. To the same effect is *National Bank v. Gerson*, 50 Kan. 589.

At the basis of all the decisions upon this question lies the same fact — the disposition of property in

such manner as to operate as a fraud upon the rights of creditors. This fact is determined in different ways, but it must exist in every case, whether it be found because the transaction is *per se* unlawful; or because of the wicked motive and unlawful purpose which prompted it. By an examination of the authorities, it may be deduced as a general rule that every disposal of property by a debtor should be held to be fraudulent in law, because made with intent to hinder, delay or defraud creditors, when it belongs to either of the following classes : First, when the transaction itself, without regard to motive, is inhibited by law as against creditors, and when its natural and necessary effect is to hinder, delay or defraud them ; or, second, when the transaction, though lawful in itself, is induced by bad motives and executed with the actual intent to hinder, delay or defraud creditors, and such is the natural and necessary consequence of the act. The case under consideration falls in the first of these classes. Upon proof of the facts, it is conclusively presumed that the debtors intended, by an unlawful act, to hinder and delay their creditors — that being its natural and necessary effect. This is sufficient to authorize an attachment.

It is further objected that the final judgment is not sustained by the evidence. The petition declared upon a note and book account. The record purports to contain all the evidence, but we are unable to find a word of testimony bearing on the amount due on the account. It is possible — perhaps very probable — that on the hearing there was no controversy as to the amount due the plaintiffs ; but the record must control our view of the matter. The motion for a new trial sufficiently raised the question. It need not af-

firmatively appear from the record that this specific objection was made in the lower court. It is sufficient that it was within the grounds laid for the new trial. It is argued by counsel for defendants in error that the affidavit for attachment might be taken as a verification of the account, or as proof of its correctness. We think not. Unless, under the statute concerning the pleading of an account, proof is dispensed with, it must be established by evidence the same as any other fact. The petition alleges that a verified copy of the account was attached to it, though it seems not to have been done. But even this would not have been enough. The petition must allege the *correctness* of the verified account attached. (Civil Code, § 108.) This was not done.

For the reasons given in this opinion, the order of the court overruling the motion to dissolve the attachment is affirmed. The final judgment will be reversed, and the case remanded for a new trial.

All the Judges concurring.