THOMAS GUFFIN *et al.*

*v.*

THE FIRST NATIONAL BANK OF MORRISON.

1. PARENT AND CHILD — *right of child to recover for services after majority.* No principle is better settled than that a son or daughter, after becoming of age, in the absence of a contract, can recover nothing for services rendered thereafter as a member of the family; and whatever the father may choose to give in after years is nothing more than a mere gift. He is under no legal obligation to make any recompense.

2. FRAUDULENT CONVEYANCE — *of father to daughter to defraud creditors.* Where a father transfers his property and notes to his daughter after incurring indebtedness, it is immaterial whether it is a voluntary settlement or founded on good consideration. In either case it will be void as to existing creditors.

3. Where a father, in consideration of the past services of his daughter, who remained with him many years after becoming of age, and kept house for him, and of her mere verbal promise to support and take care of him the rest of his days, transferred to her all his notes amounting to six or seven thousand dollars, it was *held* that the transaction could be regarded in no other light than a voluntary settlement, and fraudulent in law as to existing creditors, and that if a secret trust was reserved in favor of the donor, it could be assailed by subsequent as well as by then existing creditors.

4. And where the proof showed that the father, after such transfer, collected the interest and renewed notes as before, and really depended upon the property so transferred for his future support, and that the transfer was for his benefit to defraud creditors, it was *held* that the transaction was void, both as to existing and subsequent creditors.

APPEAL from the Circuit Court of Whiteside county; the Hon. WILLIAM W. HEATON, Judge, presiding.

This was a creditor's bill filed by the First National Bank of Morrison, against Thomas Guffin and Sarah Guffin. The opinion states the material facts of the case.

Messrs. McCoy & Sons, and Mr. F. D. Ramsey, for the appellants.

Messrs. Woodruff Bros., for the appellee.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This is a creditor's bill, which seeks to discover assets alleged to be in the hands of Sarah Guffin, but charged to be in reality the property of Thomas Guffin, the other appellant, and to have so much as might be necessary for that purpose appropriated to the payment of a judgment recovered by appellee *versus* Thomas Guffin, impleaded with Charles C. Guffin and John N. Baird. The indebtedness on which the judgment was obtained was incurred originally for a loan to the firm of Guffin & Co. made to them on the 15th day of April, 1872, on whose note, to the bank, Thomas Guffin was security. The first and second notes given were taken up, and a third note given in renewal. The last note bears date the 1st day of December, 1872. It was upon this latter note the judgment was rendered.

It is alleged that prior to the commencement of the suit and the recovery of the judgment against him, Thomas Guffin was the owner and in possession of a number of promissory notes on divers persons, besides a large sum of money, amounting in the aggregate to $7,000 or $8,000 ; that his business had previously been that of loaning money ; that just before the institution of legal proceedings against him on the note, for the purpose of cheating, hindering and delaying appellee in the collection of its claim, he made a pretended sale or gift of his notes to Sarah Guffin, his unmarried daughter, who was then and had been hitherto a member of his family, without any consideration whatever, and that she received them with a view to assist him in this unlawful purpose. By an amendment to the bill it is charged that at the time of the alleged transfer, he was largely indebted to persons other than appellee, for whom no provision was made in the transfer of notes and other property.

The answer admits the recovery of the judgment and the amount alleged to be due thereon. Appellants, however, deny that at the time of loaning the money to Guffin & Co., or at any other time since, Thomas Guffin was the owner and in

possossion of any great number of promissory notes or any large sums of money, but on the contrary, state that he is a man eighty-one years of age, has been a widower thirteen years, that Sarah, his daughter, is unmarried, is of the age of forty-nine years, and for the last thirty years has had charge of her father's household affairs. It is also alleged, in view of his advanced age, and in consideration of past services rendered to him by his daughter and her agreement to render like services in the future, and to provide for and take care of him during the remainder of his life, it was agreed Thomas Guffin should transfer to Sarah all the notes he then had, and in pursuance of that agreement it is charged he did, on the 27th day of February, 1872, assign and transfer to her all his notes, which constituted his entire property, amounting to some $6,000 or $7,000.

The question raised has relation chiefly to the good faith of the transaction between the appellants. The theory of the bill is, the transfer of the notes, if in fact any transfer was ever made, was a colorable arrangement to avoid the payment of appellee's judgment, both the legal and equitable title still remaining in the judgment debtor. The defense maintains there was a *bona fide* sale and delivery of the notes for a good consideration, and that it is valid and binding in law.

We have given the case that careful attention its importance demands. If there was really no transfer of the property or notes before the indebtedness was incurred, it is immaterial whether it is a mere voluntary settlement, or founded on a good consideration. In either case it would be void as to existing creditors.

But the transaction has all the distinctive features of a voluntary settlement. No actual consideration was paid for the notes, although their aggregate value was not inconsiderable. The consideration insisted upon is, the past services of the daughter rendered in her father's family for the preceding thirty years, and her parol agreement to support him during the remainder of his life.

No principle is better settled, than where a son or a daughter remains in the father's family after becoming of age, in the absence of a contract, such person can recover nothing for services rendered, and whatever the father may choose to give in after years is nothing more than a mere gift. He is under no legal obligation to make any recompense. The son or daughter is presumed to have rendered such services gratuitously.

The alleged agreement on the part of the daughter to support her father in the future, was by parol. It was not evidenced by any writing nor was any security taken. There is really no valuable consideration shown to support the alleged sale of the notes to Sarah, and the transaction can be viewed in no other light than a voluntary settlement of the property upon her. No matter how praiseworthy the object may be, such a settlement is fraudulent in law as to existing creditors, and if a secret trust is reserved for the benefit of the donor, it may be assailed by future as well as by existing creditors.

The contract insisted upon as having been made between appellants is itself unreasonable. Such a contract should be proved by the most satisfactory evidence to induce the belief it was ever understandingly entered into in good faith. No folly is so great as where a father places his entire estate in the hands of another, whether a son or daughter, taking back an obligation for his future maintenance. In this instance, Mr. Guffin is represented as placing the earnings of an entire lifetime, amounting to a considerable sum, in the hands of his daughter, taking back no higher security than her parol promise to provide for him during the remainder of his life. It is inconceivable, a man in the full possession of his faculties, would make such a contract, however much confidence he might have in his trusted son or daughter. Appellant himself says, he was "depending exclusively on the $5,000 " in Sarah's hands, and it is a far more rational solution of this transaction, that he was depending upon that fund rather than upon her mere promise for his future support.

Admitting the notes were transferred to the custody of Sarah in February, 1872, which was nearly two months before the indebtedness to appellee was contracted, there is evidence tending to prove, it was a secret arrangement for the benefit of Thomas Guffin.   It is shown he continued to receive interest as it became due, renewed the former loans and made new loans as he had formerly done with his own money.   It is said he did it as agent for Sarah, but it is clearly proven she knew but little in regard to the business, and it was controlled by her father as it had previously been.   The conviction produced by the evidence is, that Sarah was the mere custodian of these notes under a colorable arrangement she should be the owner, while the property in the securities remained in Thomas Guffin.   No other theory can be maintained consistently with the evidence.   Disregarding all the testimony offered by appellee, that of the appellants alone makes this impression on our minds.   It is incontestably proven, if the notes were transferred to Sarah at all, it was for the benefit of her father, and for no other purpose.   Such a transaction is void both as to existing and future creditors.   *Taylor* v. *Jones*, 2 Atk. 600 ; *Sands et al.* v. *Codwise et al.* 4 Johns. 536.

It does not admit of controversy that Thomas Guffin controlled these securities, after the alleged assignment, the same as he had done before.   But the attempted explanation of his conduct in this regard, that he was acting as the agent of his daughter, has more the appearance of an artifice, adopted for the purpose of concealing the true character of the transaction, than a real agency.

We see no reason for reversing the decree of the circuit court, and it is accordingly affirmed.

*Decree affirmed.*