ROBERT LAWSON *et al.*

*v.*

ADELAIDE M. FUNK.

*Filed at Ottawa January 23, 1884.*

1. FRAUDULENT CONVEYANCES—*fraudulent intent not essential.* There are two distinct grounds upon which conveyances and other contracts will be deemed fraudulent as against creditors: First, such as are entered into with a fraudulent intent; and second, such as, from the terms of the agreement or the nature of the transaction itself, are deemed so as a mere inference of law, without regard to the motives or actual intentions of the contracting parties.

2. In the first class of cases the fraudulent intent is always a question of fact, to be established by extrinsic proofs, while in the other the contract or transaction, under the circumstances shown, may be deemed fraudulent, although the parties may have acted in the best of faith.

3. In determining whether there is fraud in fact in a contract or transaction, the court will look at the relations of the parties, the terms of the contract, the value and character of the property conveyed, the consideration, and of what it consists, and to the circumstances under which the transfer was made.

4. SAME—*of the consideration—contract for support of grantor.* If an insolvent debtor conveys property which is liable to be taken for his debts, in consideration of an agreement or covenant on the part of the grantee to maintain or support the grantor, the conveyance will be fraudulent and void as against creditors; and this is so if it appears that any part of the consideration is to be paid in the future support of the grantor.

5. SAME—*in the particular case—conveyance to grantor's sons on a claim of a contract for services.* The sons of a grantor of land, after becoming of age, remained with their father, as before, six or eight years, under a secret verbal agreement that they were to be paid more than the usual wages, to be boarded and clothed, and furnished with all the spending money they might need, free, and have their teams and stock fed out of their father's grain; and it was claimed that none of such wages were ever paid, the contracts having run six and eight years, when the father conveyed them his farm and all his other property, and such indebtedness was then applied in payment for the property, and it appeared that no one except the parties ever knew of such secret agreement for wages. It was *held*, that a court of equity would not sanction a preference given by a father to his children, under such circumstances, as against other creditors.

. APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Ogle county; the Hon. JOHN V. EUSTACE, Judge, presiding.

The bill in this case charges, in substance, that Adelaide M. Funk, appellee, on the 8th of October, 1879, recovered a judgment in the Ogle circuit court against the appellants, Robert Lawson and Samuel H. Shoop, for the sum of $1166.26, and costs, upon which an execution was issued on the 3d of November following, and placed in the hands of the sheriff of said county, who subsequently returned the same *nulla bona;* that an *alias* execution was sued out on said judgment, and was then in the hands of the sheriff wholly unsatisfied; that at the time said judgment was obtained the said Robert Lawson was the owner in fee of certain real estate in said Ogle county, particularly described in the bill, amounting altogether to two hundred and forty acres; that prior to the rendition of the judgment, but after the indebtedness upon which the same was rendered had accrued, to-wit, on the 6th of May, 1879, the said Robert made a pretended conveyance of said real estate to his two sons, George and John, for the pretended consideration of $2330; that said conveyance is colorable only, and was made and intended by all the parties thereto to hinder and delay the creditors of the said Robert, and particularly the complainant; that said conveyance was made without consideration, and that the premises in question are now held by the said John and George in trust for the said Robert, their father; that with the view of further hindering and delaying his creditors, the said Robert, at the same time, colorably turned over and transferred, without consideration, to the said John and George, a large amount of personal property, of the value of $2000, or more; that the said Robert, outside of the property so fraudulently transferred to his sons, had

no means wherewith to satisfy or discharge complainant's said judgment, etc.

The defendants filed a joint and several answer, admitting the recovery of the judgment by appellee, the issuing of an execution thereon, and its return, "no property found;" the ownership of the lands by Robert Lawson, and his subsequent conveyance by quitclaim deed to his two sons, George and John, for the expressed consideration of $2330; the sale and transfer of the personal property, but denying it was worth $2000 or even $1000. The answer also admits Robert Lawson's insolvency, but insists his conveyances to his sons were made in good faith, and for a valuable consideration. The answer, in most other respects, consists of a general denial of the equities of the bill.

The cause was heard at the April term, 1883, of the Ogle circuit court, upon bill, answer, replication and proofs, resulting in a decree declaring Robert Lawson's deed of the 6th of May, 1879, null and void as to complainant, and setting the same aside, with a saving as to the rights of certain mortgagees claiming through the grantees in said deed. On appeal to the Appellate Court for the Second District this decree was affirmed, and the appellants bring the case here for review.

Mr. O. C. LATHROP, for the appellants:

A conveyance is void only as to prior creditors, when made to defraud them, and not as to subsequent creditors. *Wooldridge* v. *Gage*, 68 Ill. 167.

Although the father made the sale expressly to defeat the collection of that claim, unless the sons participated in that act the conveyance can not be attacked for fraud. *Mathews* v. *Jordan*, 88 Ill. 602; *Miller* v. *Kirby*, 74 id. 242; *Hatch* v. *Jordan*, id. 414; *Gridley* v. *Bingham*, 51 id. 153; *Nelson* v. *Smith*, 28 id. 495; *Ewing* v. *Runkle*, 20 id. 448; *Hessing* v. *McCloskey*, 37 id. 342; Rev. Stat. 1874, chap. 59, sec. 5.

The promise on the part of John and George Lawson to pay their father's indebtedness was a valuable consideration in part for the conveyance, for upon such promise the creditors of the father, whose debts were so provided for, might maintain an action. *Eddy* v. *Roberts*, 17 Ill. 508; *Ralston* v. *Wood*, 15 id. 171; *Dubbs* v. *Findly*, 2 Pa. St. 397.

The statements of a vendor, made after the sale, are not admissible to show the transaction was fraudulent. *Gridley* v. *Bingham*, 51 Ill. 153; *Hessing* v. *McCloskey*, 37 id. 347.

Evidence is admissible to show that the grantee paid the full value of the land transferred, and thus rebut the presumption of a secret trust. *Albee* v. *Webster*, 16 N. H. 371.

In *Slater* v. *Dudley*, 18 Pick. 375, the court say that the agreement of the grantee to support the grantor and his wife was *prima facie* evidence of fraud, but it was open to explanation. If the full value of the land was paid, the agreement to support the grantor would be gratuitous, although suspicious.

Something more than suspicions are required to prove fraud. The evidence must be clear and cogent, fairness being always presumed. *Shinn* v. *Shinn*, 91 Ill. 477; *Root* v. *Cook*, 81 id. 266.

The mere fact of relationship will not characterize a sale from the one to the other as fraudulent. *Waterman* v. *Donalson*, 43 Ill. 32.

Mr. J. W. Allaben, and Mr. William Barge, for the appellee:

The grantees being sons of the grantor, a suspicion of fraud arises, and the consideration, its payment and adequacy, must be more fully proved than as though they were strangers. *Brice* v. *Meyers*, 5 Ohio, 126; *Welsh* v. *Kellogg et al.* 11 id. 398; *Lake* v. *Doud*, 10 id. 423; *Gibson* v. *Hill*, 23 Texas, 77.

The agreement, as part of the consideration, to support the grantor and his wife during their lives, was a legal fraud,

creating a secret trust in favor of the grantor, and rendered the conveyance void as to creditors, even though there was other valuable consideration. *Moore* v. *Wood,* 100 Ill. 451; *Sweeney* v. *Damron,* 47 id. 458; *Bridgeford* v. *Riddell,* 55 id. 264; *Power* v. *Alston,* 93 id. 590; *Guffin* v. *First National Bank,* 74 id. 262; *Emerson* v. *Bemis,* 69 id. 537; *Mills* v. *Hometh,* 19 Texas, 257; Bump on Fraudulent Conveyances, 246, 247.

A son can recover nothing, after becoming of age, for services as a member of the family, in the absence of a special contract. Any recompense is a gift. *Guffin* v. *First National Bank,* 74 Ill. 262.

Contract for service for a long term, not established by the evidence of the parent and child, unsupported, where the father was in embarrassed circumstances and the salary is exorbitant. *Haney* v. *Nugent,* 13 Wis. 315.

Where a grantor is interested in sustaining the conveyance, his admissions will be competent proof against the conveyance; and Robert Lawson's support depended on the grantee's holding the property. *Hitt* v. *Ormsbee,* 12 Ill. 166; *Martin* v. *Dryden,* 1 Gilm. 209; *Rector* v. *Rector,* 3 id. 118.

Fraud in one instance vitiates the entire transaction, even with consideration. *Strohm* v. *Hayes,* 70 Ill. 41; *Weisiger* v. *Chisholm,* 22 Texas, 670.

Where fraud is charged, and it appears the price given is much less than the real value, it is a strong circumstance to prove fraud. It is not required to prove value as laid in the bill. *Lloyd* v. *Higbee,* 25 Ill. 603.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

The evidence in this case has taken a wide range, and is too voluminous to attempt to comment upon it in detail. To do so would extend its discussion to an unwarrantable length, without any corresponding benefit. We shall therefore content ourselves with adverting to some of its more

important features, and giving the general results of our consideration of it.

The real issue presented by the pleadings and evidence is, was the conveyance by Robert Lawson of his property to his sons, on the 6th of May, 1879, fraudulent or not. To this vital issue the whole of the testimony taken in the case is either directly or indirectly addressed. As to the general legal principles applicable to cases of this character, there is but little, if any, room for controversy. The authorities clearly establish two distinct grounds upon which conveyances and other contracts will be deemed fraudulent as against creditors: First, such as are entered into with a fraudulent intent; and second, such as, from the terms of the agreement or the nature of the transaction itself, are deemed so as a mere inference of law, without regard to the motives or actual intentions of the contracting parties. In the first class of cases the fraudulent intent is always a question of fact, to be established by extrinsic proofs. In the latter, the agreement, under the circumstances shown, is deemed fraudulent, although the parties may have acted in the best of faith. Apt illustrations of the latter class of cases are found in the case of an insolvent person who transfers his property to another, reserving to himself a beneficial interest therein; or where one, being insolvent, disposes of the whole of his estate upon a long credit, thereby putting it beyond the reach of his creditors; or where one, by a contract not in writing, makes a sale of chattels and retains possession thereof. All such contracts and transactions are conclusively presumed, as an inference of law, to be fraudulent, without regard to the real motives or purposes of the parties. *Thornton* v. *Davenport*, 1 Scam. 296; *Phelps* v. *Corts*, 80 Ill. 109; *Greenebaum* v. *Wheeler*, 90 id. 296; *Tunison* v. *Chamblin*, 88 id. 378; *Pope* v. *Andrews*, 1 Sm. & Mar. 135; *Kepner* v. *Burkhart*, 5 Barr, 478; *Grannis* v. *Smith*, 3 Humph. 179; *Mitchell* v. *Beal*, 8 Yerg. 134.

Appellee insists the present contract or conveyance is fraudulent on both the grounds suggested. To determine whether there was any fraudulent intent, or fraud in fact, in the case in hand, we must look at the relations of the parties, the terms of the contract, the value and character of the property conveyed, the consideration, and of what it consisted, and to the circumstances under which the conveyance was made. The tract of land in question constituted the homestead of Robert Lawson, and was all the real estate owned by him. At the time of the conveyance there was an incumbrance upon it of $2400, which the grantees, as a part of the consideration, assumed to pay. After a careful examination of the whole of the evidence we think $37.50 an acre would be a fair valuation of the land, which would make $8962.50, and the personal property is shown to be worth about $1000 more, making a total of $9962.50. It is claimed in the answer that in part payment of the property the grantees assumed to pay other debts of their father, amounting altogether to the sum of $5100, while the testimony of John shows the amount to be $5500, though he claims in another part of his testimony that he paid a $300 claim due from his father which was not on the list of claims he and his brother had undertaken to pay. But putting the indebtedness assumed by them at the amount fixed by John,—which is certainly a liberal estimate, so far as the appellants are concerned, as it is $400 more than is claimed in their answer,—there would be a balance on the property of $4462.50 to be accounted for, which is only in part done, according to appellants' own showing.

It appears from the record, Robert Lawson was a farmer, and his two sons, John and George, were both single, and had always resided with him, and in connection with two younger brothers, Pierce and Fred, had assisted him in carrying on the farm. John, the oldest of the boys, became of age in May, 1871, and George, in March, 1873. It is claimed

by them that at the time they respectively became of age they severally entered into contracts with their father to work for him on the farm at $20 a month, and that nothing had ever been paid on either of these contracts from the time they were made up to the date of the conveyance,—being a period of eight years as to John, and six years as to George; and this indebtedness from.the father to the boys, which is claimed to have been cancelled at the time, constituted the remaining consideration paid for the land and personal property in question, being fixed in a receipt given by them at the time, at $3120, which, added to the $5500, makes a total of $8620, being $1342.50 less than our estimated value of the property. There is, however, a clear. discrepancy between their testimony and the receipt with respect to the number of years John worked on the farm under his contract. According to his testimony he worked eight years, whereas the receipt fixes the time at seven. Assuming the transaction to have been *bona fide*, and his claim for services a just one, it is difficult to conceive how so glaring a mistake could have occurred; but regarding the transaction as colorable, merely, such a mistake might well have happened. It further appears, from the testimony of the boys, that in addition to the $20 a month their father clothed them and furnished them with spending money, and that this was in pursuance of the original contract with them.

There are some peculiar features and singular coincidents in these alleged contracts that challenge observation. John, in speaking of the contract with him, says: "I was to receive $20 a month as long as I would stay there and *we could agree.* I was also to receive my clothing, and spending money, and my board included.   *   *   *   It was only a verbal contract. It was made *in the field* at home. There was nobody present but him (his father) and I. He was to furnish me all the spending money I would want." George, in testifying to his contract with the old man, says: "The contract was, I should

stay at home and work, and receive $20 a month as long as we *could agree.* I was to receive my board and clothing and washing, and also the spending money I needed.   *   *   * I couldn't just exactly say where we was when the contract was made. We were *in the field* at home, somewhere. Nobody else was present."

It will be thus seen that these contracts, though made full two years apart, are not only essentially alike in almost every particular, but there is a striking similarity in the language used by the witnesses in setting forth the provisions in their respective contracts, and this similarity extends even to most of the incidents connected with the two transactions. Thus, each contract was a mere verbal one,—neither was made in the presence or hearing of any one but the contracting parties themselves, and both were made out in the field on the farm. Though eight years in one case, and six in the other, had elapsed when the alleged adjustment took place, not a cent had ever been paid under either of the contracts, and it is a significant fact the record fails to show that during this entire period any one outside of the immediate parties knew there were any such contracts in existence. It is also clearly shown, from the evidence, the labor of these two young men was not required the year round to carry on the farm, and moreover, taking it the year round, and from year to year, during the period in question, the amount they claim they were to receive by the month was at least one-fourth more than was usually paid in that locality for the same kind of labor.

There is another matter worthy of note in this connection. The two youngest sons, Fred and Pierce, during much of this time were also living at home with their father and working on the farm, and so far as the record shows were receiving nothing for their services, and yet the father, in the bestowal of gifts or making advancements to his sons, seems to have treated them all substantially alike. If any differ-

ence, the two oldest were mostly favored.   He gave to each
of his four sons a team, which were fed and kept at his ex-
pense while they remained on the farm, and at the time of
this alleged sale some thirty or thirty-five head of hogs were
then on the farm, belonging to John and George, which were
kept and fed at the father's expense.   Under these circum-
stances it is not surprising that Robert Lawson found him-
self largely involved, as the evidence shows he was.   If a
father, on his sons arriving at age, may furnish them with a
home, board and clothe them, provide them with all the
spending money they want, give them teams of horses or
mules, to be kept and fed at his expense, permit them to
keep stock of their own, to be raised and maintained in like
manner, to relieve them even of the burden of taxation, as
was done in this case, and yet at the same time have a con-
tract with them, of which no one knows anything but them-
selves, by which he binds himself to pay them exorbitant
prices for their services, and suffers the same to run on
indefinitely for six or eight years without any payment or
adjustment of their claims, as was the case here, it could
hardly be expected, in most of cases, after paying their de-
mands as preferred claims, there would be much, if anything,
left for outside creditors, who dealt with him in ignorance of
the true condition of the debtor's affairs.   We do not think
equity sanctions a preference given by a father to his children
under such circumstances.

There is another feature of this case worthy of notice.   At
the time of the conveyance of this property by Lawson to his
sons, a list of the names of his creditors was made out, but
the amount of the claims was not known by the sons, or even
the father himself, hence it was impossible for the seller to
know what he was getting for the property, or for the pur-
chasers to know what they were paying.   Upon the hypoth-
esis the sale was merely colorable, and intended to prevent
the forced collection of appellee's judgment, their conduct in

this respect was natural enough; but assuming it to have been a *bona fide* transaction, their conduct can hardly be accounted for on business principles.

Outside of the considerations already suggested, it is very clear the testimony of George and John, (particularly that of the latter,) which is relied upon solely to establish the alleged contracts of hiring between them and their father, is not calculated to inspire a very high degree of confidence. In it will be found a number of contradictions and inconsistencies, which we can not stop to point out, that greatly diminish its probative force,—so much so, that we think the court below was warranted in rejecting it altogether, as it probably did.

But waiving altogether the question of fraudulent intent or fraud in fact, the question recurs, was the transaction fraudulent in law, without regard to the actual motives or purposes of the parties. At the time of the making of the deed, the said John and George executed to their father a contemporaneous agreement, as we have already seen, by which they undertook to pay certain debts of the latter. This agreement and the quitclaim deed are, of course, but parts of the same transaction, and must be construed as if they were both embodied in one instrument. The agreement in question contains a full recital of the consideration of the land and personal property, and is in these words:

"In consideration that our father, Robert Lawson, sells to us the farm of about two hundred and thirty-nine acres, upon which he now lives, and gives us a bill of sale of all his personal property on said farm, we hereby agree to release him from all claims for wages which he now owes us, and also agree to keep him and mother during their lives, and to pay all the following debts and claims against him or the farm," etc.

The law, as we have already seen, is well settled that where an insolvent person conveys property subject to the payment

of his debts, in consideration of an agreement or covenant on the part of the grantee to maintain or support the grantor, such conveyance will be fraudulent and void as against the latter's creditors. (*Moore* v. *Wood et al.* 100 Ill. 451.) That case, in many of its leading features, is on all fours with the present case, and is therefore conclusive of it. It was there said: "A debtor can not convey real estate to another, to be held wholly or in part in secret trust for himself." And in *Lukin* v. *Aird*, 6 Wall. 78, the United States Supreme Court recognizes the same doctrine in the following language: "A trust thus secretly created, whether so intended or not, is a fraud on creditors, because it places beyond their reach a valuable right, * * * and gives to the debtor a beneficial enjoyment of what rightfully belongs to his creditors." The general doctrine thus laid down is fully recognized in numerous decisions of this court: *Guffin* v. *First National Bank of Morrison*, 74 Ill. 259; *Power* v. *Alston*, 93 id. 587; *Annis* v. *Bonar*, 86 id. 128; *Jones* v. *King*, id. 225; *Emerson* v. *Bemis*, 69 id. 537.

Under the authority of these cases it is clearly sufficient to defeat a conveyance as to creditors, if it appears any part of the consideration is to be paid in future support of the grantor. The law, under such circumstances, does not stop to inquire what part of the consideration was in money or property and what in future support, with the view of adjusting the respective equities of the creditors and purchaser, but treats the conveyance as void *in toto*. *Moore* v. *Wood et al. supra*, and authorities there cited.

As the agreement of John and George to keep their father and mother during their lives is expressly declared by the parties themselves to be a part of the consideration for the conveyance of the property, there is no ground whatever for questioning that fact, and it therefore follows, under the authorities cited, the conveyance in question was void as against appellee.

33—108 ILL.

We are clearly of opinion, in any view we take of the case, the decree of the court below was right, and that the Appellate Court therefore properly affirmed it.

*Decree affirmed.*