ALLISSEUS NEUSTACHER

V.

KATHRINA SCHMIDT.

*Action against Step-Father to Recover for Services and Rent—Statute of Limitations—Dower—Rights of Widow before Assignment—Sec. 27, Chap. 34, Gross' R. S.*

1.  In an action by a step-daughter against her step-father to recover for services and rent on certain premises, of which she was one of the heirs, it is *held:*  That the evidence of a promise to pay wages and rent is weak and unsatisfactory; that the evidence to support a new promise to remove the bar of the Statute of Limitations is insufficient; and that, without a promise to pay, the defendant is not liable.

2.  To remove the bar of the Statute of Limitations the new promise must be definite as to amount, and the evidence of such promise must be clear and satisfactory.

3.  Sec. 27, Chap. 34, Gross' R. S., 2d Ed., 1869, was not a homestead

statute. Under that section the widow might retain possession of the house and plantation where the husband most usually dwelt, next before his death, free from rent until her dower was assigned.

[Opinion filed January 7, 1888.]

APPEAL from the Circuit Court of Bureau County; the Hon. W. STIPP, Judge, presiding.

Messrs. ECKELS & KYLE, for appellant.

If a child remains with a parent after arriving at majority, in the same apparent situation as when a minor, in the absence of a contract no recovery can be had for services so rendered. And the same rule applies to step-children, when they stand to each other in the relation of parent and child. Brush v. Blanchard, 18 Ill. 46; Miller v. Miller, 16 Ill. 296; Freeman v. Freeman, 65 Ill. 106; Byers v. Thompson, 66 Ill. 421; Morton v. Rainey, 82 Ill. 215; Guffin v. First Nat. Bank, 74 Ill. 259; Cooper v. Cooper, 3 Ill. App. 492.

A promise to pay wages after the work has been done, and which was not understood by the parties at the time it was done, that it should be paid for, is without consideration and can not be enforced. Guffin v. First National Bank of Morrison, 74 Ill. 259; Arnold v. Franklin, 3 Ill. App. 141.

The widow may, in all cases, retain the full possession of the dwelling house in which her husband most usually dwelt next before his death, together with the outhouses and plantation thereto belonging, free from molestation and rent until her dower be assigned. Chap. 34, Gross' Statute 1871, Sec. 27, page 219.

Where a new promise is relied upon to take a case out of the Statute of Limitations, the promise must be to pay the particular debt; it must be unconditional; it must have been made within five years next preceding the commencement of the suit, and it must be proved by clear and satisfactory evidence. Cagwin v. Ball, 2 Ill. App. 70; Hayward v. Gunn, 4 Ill. App. 161; Kallenbach v. Dickinson, 100 Ill. 427; Wachter v. Albee, 80 Ill. 47; Carroll v. Forsyth, 69 Ill. 127; Dickerson v. Sutton, 40 Ill. 403.

The new promise must be to pay the particular debt, and it must be so certain in its character and terms as to create a new debt of the same character and dignity of the old. Sennott v. Horner, 30 Ill. 429; Kallenbach v. Dickinson, 100 Ill. 427.

Messrs. GIBONS & GIBONS, for appellee.

LACEY, J. The appellant was married to the mother of the appellee in 1863, the mother having at the time three children by her first husband, she, the appellee, eight years old, being the oldest. The other two were a boy and girl, the next youngest being the girl, about two and one-half years younger. The father of the appellee owned forty acres of land, on which he and the mother resided at the time of his death, and she and appellant continued to reside thereon for some years after the appellant's marriage with her. The appellant and appellee's mother had four more children born to them after their marriage. The appellant raised all those children as one family, treating the three step-children as his own, and furnishing them support. The appellee, after she became eighteen years of age, continued to reside with appellant as a member of the family, the same as before, until she was twenty-eight years of age, when she was married, with the exception of about eleven months she was out working on her own account.

It is not claimed that she could recover anything for wages without an express agreement on the part of appellant to pay wages, as the presumption of law would otherwise be that the services were rendered gratuitously or as a member of the family. Guffin v. First Nat. Bank, 74 Ill. 259. Such a promise the appellee undertook to show on the trial, and as the most if not all the claim had been barred by the Statute of Limitations, also to prove a subsequent promise to take the case out of its operation. Another portion of her claim was rent for her interest in the forty-acre tract of land for about ten years, being from the time the appellant and his wife ceased to occupy it as a homestead. The appellee recovered in the court below the sum of $1,188.44.

Neustacher v. Schmidt.

The entire proof of the alleged promise in the first instance to pay appellee wages, rests on the oath of the appellee, and of the subsequent promise to pay, on her testimony and that of her husband. All this is absolutely denied by the appellant, and strongly corroborated by the younger sister of appellee, Mrs. Meisel, who lived at home all or a greater portion of the time, the same as appellee, and worked and was treated the same, and she never heard it intimated by her sister that she was working for wages, and appellee was never paid anything on account of wages, but was clothed the same as before. Mrs. Meisel was never promised anything for rent for the use of the forty-acre tract of land. According to appellee's testimony she was twenty-four years old when she left and went away from home to work and then worked for appellee about a year after that at her sister's (Mrs. Meisel's) request, she wanting to get married, and also that of her step-father. Appellant, she says, would pay her what she was getting from others, which was $2.50 per week. This was before she went back from Mendota. She says after he promised to pay her she went back to work. She also says in another part of her testimony that her father agreed to pay her $2.50 per week after she was eighteen; the time when this promise was made is not stated; and he also promised to pay $2.50 per week when she was stacking barley when she was twenty-three years old. This is substantially all her testimony as to the agreement to pay her for work. The statement that her step-father agreed to pay her after she was eighteen years of age, must refer to the time she claims it was made before she went back, or at the time she was stacking barley there. In neither of these was there any agreement to pay her for past services, only for those to be rendered in the future. There is no evidence of any agreement prior to that time, and even if there had been one made subsequently to the rendition of the services it would have been without consideration, as appellant was not bound to pay anything. See Guffin v. First National Bank, *supra*.

There was only about three years' services performed by appellee after she came back from Mendota. If she were only allowed for this it would only amount, at $3.50 per week, to

$390, subject to rebate for her clothing in the meantime. This amount, together with any reasonable allowance, if any could be made for the use of the land, would fall far short of the amount of the verdict. The next question is, was she entitled to any pay for the rent of the land? Sec. 27, Chap. 34, Gross' R. S., 2d Ed., 1869, provides as follows:

"The widow may, in all cases, retain the full possession of the dwelling house in which her husband most usually dwelt, next before his death, together with the outhouses and plantation thereto belonging, free from molestation and rent until her dower be assigned." This is not a homestead statute, as was held by the court below in appellee's 6th instruction. It was passed long before the homestead law, was independent of it, and had nothing to do with it. If the house and the plantation thereto belonging was the place where the husband usually resided next before his death, then the widow might retain full possession of it, free from molestation and rent until the dower should be assigned. The language of the statute does not require that the widow should occupy the building and premises as a homestead, but only possession is required, and that does not mean that she must actually reside on it to possess it. The dower was never assigned, and the late widow, appellant's wife, continued to possess it and gave the use of it to her husband. The husband was not compelled to account for the use of it to the heirs. The rents did not belong to them and would not until the widow's dower was assigned.

If the mother had surrendered her claim to them it might, but there is no evidence of that. The appellant also gave money enough to his wife, some $250, to raise the incumbrance upon it, existing at the death of appellee's father. He also made lasting and valuable improvements and repairs and paid all the taxes on it. It is highly improbable that appellant, having the right to all the rents, through the consent of his wife, would voluntarily agree to pay appellee or her husband rent for the land, or to pay her wages that he was not bound for.

We will next consider the question of the subsequent prom-

ise which, it is supposed, took the case out of the Statute of Limitations. And we will consider it without reference to the question of whether there was any original debt to revive. The appellee testified that her step-father told her he would pay her her share of the rents when she got married. The last conversation was about the time she was married. The appellee's husband testified that some time before he was married (about three weeks), he told the appellant that he was going to marry the girl. Appellant said "he did not have any money, but if we would support ourselves for a year, after that he would pay her for her wages and rent; about a year after that he said he did not have the money but would pay her a year after that; the last conversation appellant said he did not owe anything." On cross-examination witness says appellant said: "I will pay you all I owe her for wages and rent." "There was no amount the defendant promised to pay."

We do not think this promise is definite enough. All that it amounted to, if true, which is denied by appellant in his testimony, is that if upon a settlement he owed appellee anything he would pay it. At least, taking it most strongly, it was only inferable that he owed her some amount for rent and wages, and would pay what was found due on a settlement. The question of his offsets for taxes paid and improvements made and the amount paid to remove incumbrances and the time he occupied the land and the reasonable amount of rent for the land, were all left open questions to be settled and adjusted the same as it originally was. In the same manner everything concerning the wages, deductions for goods furnished, time worked and the amount of wages, were left open.

The Statute of Limitations is a statute of repose passed on considerations of public policy for the general good of society. After the lapse of the statutory period the debt is conclusively presumed to be paid. The debt may be revived by a definite promise to pay the debt after stating the amount or referring to something like a promissory note wherein the amount is definitely fixed. Nothing of the kind is done here; the entire controversy is left open the same as it was before the statute had run.

The alleged promise did not clearly admit that the appellant owed any sum of money to appellee. If upon a final settlement between them it had been found that appellant owed nothing, then such promise would have been fulfilled without the payment of any sum of money.

Again, the claim for rent at the time of the alleged new promise, was partly barred, *i. e.*, that portion of it that was more than five years old, and also all that claim for wages, the services for which had been rendered more than five years previously. Portions were not barred at the time of the alleged promise. The marriage must have been in 1883, and the appellee came of age in 1873. At the time of the supposed promise there was a lapse of ten years for which wages and rent was claimed. Nothing has accrued since then. Five years of that ten was barred. There was no promise made in the field when appellee "was stacking barley" in 1878, when she was twenty-three years old, to pay wages for work already performed, nor at the time she came back from Mendota. She says, however, that her father promised to pay her wages *after* she was eighteen years old. We, however, find that the only evidence as to when this promise was made, is her testimony as to what was said at the time she was married. She says as to that conversation, concerning her claim for $2 per week from the time she was eighteen, her step-father told her he would pay her "when I got married." If this does not fix the time then there is no time proven. As to the rent, she says that, "when I was eighteen years old he promised to pay me the rents." There is no other evidence of any other promise till about the time she was married. So that there was a bar of at least five years of her claim at the time of the alleged promise about the time she was married. Now, when appellant said he would pay her all he owed her for rent and wages, did he mean to include all those portions that had been barred by the statute? Legally, he did not owe for that at all. The agreement and expressions are too equivocal to take the case out of the Statute of Limitations. "The evidence must be clear and satisfactory to overcome the bar of the statute." Wachter v. Albee, 80 Ill. 47; Carroll v. For-

syth, 69 Ill. 127. We regard the evidence offered by appellee to prove a promise in the first instance to pay rent and wages as being weak and unsatisfactory, and the evidence to support a new promise insufficient to sustain the verdict. Several of the instructions given for appellee and modifications of appellant's instructions were erroneous and are sufficiently pointed to by what is said in this opinion.

The judgment of the court below is therefore reversed and the cause remanded.

*Reversed and remanded.*