## Charles Eichler, Appellee, v. Gottfried Hoeft et al., Appellants.

## Gen. No. 15,883.

1. JUDGMENTS—*when not subject to collateral attack.* A judgment upon which a creditor's bill is predicated cannot be attacked as invalid in such creditor's bill proceeding. The proper practice is for the defendants to apply to the chancellor to stay the proceedings until such time as resort could be had to a court of law to set aside the judgment.

2. CREDITOR'S BILLS—*when conveyance fraudulent.* A conveyance based upon the consideration of future support and maintenance is void as against creditors. *Held,* in this case, that the conveyance in question was not supported by any valid consideration and was void as against the rights of the complainant creditor.

Bill in chancery. Appeal from the Superior Court of Cook county; the Hon. ALBERT C. BARNES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Affirmed. Opinion filed October 4, 1911. *Certiorari* denied by Supreme Court (making opinion final).

SEYMOUR STEDMAN and ARTHUR J. SHUTAN, for appellants.

JOHN A. BLOOMINGSTON, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

This appeal is prosecuted to reverse a decree of the Superior Court whereby certain conveyances of real estate are set aside as to the judgment lien of the appellee, Charles Eichler, and said real estate is ordered to be sold to satisfy such judgment.

The bill alleges, in substance, that Gottfried Hoeft, one of the appellants, owned certain real estate in Chicago, which on April 29, 1907, he conveyed to one Charles H. Soelke, who thereafter conveyed the same to Edward A., William F. and Clara W. Hoeft, the other appellants, as joint tenants; that subsequent to said conveyances appellee recovered a judgment in the Circuit Court of Cook county against said Gottfried Hoeft and one Adolph Hoeft for $1,140.60 and costs, upon which judgment execution was afterwards issued and returned, no part satisfied; that said conveyance from Gottfried Hoeft to Soelke, and the conveyance from the latter to Edward A. Hoeft and others, were mere shams—unsupported by any valid consideration whatsoever, and were made with the intention of defrauding appellee, who was then a creditor of Gottfried Hoeft. In their joint and several answer to said bill the appellants denied all of its material allegations, and charged that said judgment was entered by confession without the knowledge or consent of Gottfried Hoeft; that the judgment note upon which judgment was predicated was executed by said Gottfried Hoeft as guarantor for Adolph Hoeft, and that said appellee, after maturity thereof, for a valuable consideration repeatedly extended the time of payment thereof without the knowledge or consent of said Gottfried Hoeft, and that

thereby said Gottfried Hoeft ceased to be liable and was not liable on said note at the time said judgment was entered thereon; that during the period of said extensions of said note, said Adolph Hoeft became insolvent and was adjudged a bankrupt; that sufficient time elapsed from the original maturity of said note until the insolvency of said Adolph Hoeft, for appellee to have collected said note from said Adolph, who until then was well able to pay the same; that in consequence of the negligence of appellee in failing to collect said note from said Adolph, he was chargeable with laches; that by reason thereof, and of the subsequent insolvency of said Adolph, said Gottfried had lost and been deprived of any indemnity which he might otherwise have obtained from said Adolph, and had, therefore ceased to be liable on said note long before the rendition of said judgment. Appellee filed his general replication to said answer, and the cause was thereupon heard by the chancellor upon oral testimony and documentary evidence.

Appellants were permitted to introduce evidence tending to support the averments of their answer with respect to the invalidity of the judgment upon which the bill was predicated, but it was held by the chancellor, and properly so, that said judgment was not open to attack in this proceeding. Newman v. Willitts, 60 Ill. 519; Sawyer v. Moyer, 109 Ill. 461; Davidson v. Burke, 143 Ill. 139. In the former case it was said:

"Upon a creditor's bill filed to obtain satisfaction of a judgment, after the return of an execution at law unsatisfied, a court of chancery is not authorized to decide upon the regularity of the judgment and execution in the court of law, but in a proper cause the proceedings upon the creditor's bill will be stayed a sufficient length of time to enable the defendant to apply to the court at law for an order to set aside the judgment or execution for irregularity."

No action was taken on behalf of appellants for any stay of the proceedings for the purpose of enabling them to attack the judgment.

At or about the time of the transactions here involved Gottfried Hoeft was about 70 years of age, and resided with his wife, his sons Adolph, William and Edward, and his daughter Clara, at 784 Milwaukee avenue, which property he owned in fee. He was also the owner in fee of a lot on the corner of Leavitt and Lubeck streets, and certain premises in Lake View. The judgment in question for $1,140.60 was recovered by appellee against Gottfried and Adolph Hoeft on May 6, 1907, upon a note for $1,000 executed by said judgment debtors October 3, 1903, payable six months after date, which note was given to appellee for money borrowed and used by said Adolph in his business as a merchant tailor. On February 11, 1904, for money borrowed for the same purpose said Gottfried and Adolph gave to one McKay, a judgment note for $500, payable six months after date, which note was endorsed by the payee October 31, 1904, to the order of Edward Hoeft. On September 30, 1904, said Gottfried and wife executed their judgment note for $500 payable to the order of themselves four months after date, which note was endorsed by themselves, and negotiated to one Soelke. The property in Lake View was encumbered by a mortgage for $1,500. On January 2, 1906, Gottfried executed a judgment note to his son Edward for $5,500 payable on demand. April 11, 1907, Gottfried and wife executed and acknowledged a quit claim deed of all the real estate owned by them to their son Edward, for the expressed consideration of $1.00, and other good and valuable considerations, which deed appears not to have been delivered. April 16, 1907, Gottfried and wife by quit claim deed conveyed the same real estate, for the like expressed consideration, to one Soelke, who, on April 20, 1907, con~~~~~~ the said real

estate to Edward, William and Clara Hoeft, children of Gottfried, as joint tenants.

Appellants' main contention, and the only one seriously argued, is that the decree is contrary to the evidence and to equity and good conscience.

There was some effort on the part of appellants to show that Gottfried and his sons Edward and William believed that the note upon which judgment was subsequently entered in favor of appellee had been paid at the time the conveyance in question was made, but the evidence not only wholly fails in that regard, but clearly tends to show that the conveyance was made shortly after appellee had threatened to collect the note by legal process, and in view of such threat by appellee.

Whether the conveyance was made at the suggestion of Gottfried, or upon the request of his sons Edward and William, is not of controlling significance, although the evidence bearing upon that question is contradictory.

Edward, who held the position of auditor in a bank, appears to have been relied upon by the members of the family to look after their financial affairs, and he was named as sole grantee in the first deed executed by his father, who had confidence in him that he would deal equitably with the other members of the family. In view of the fact, however, that the son Adolph had been rendered financial assistance by his father and brothers to an amount which was thought to be equal to, or in excess of his share of the father's property, the real estate was subsequently conveyed by Gottfried and wife to Soelke, who was a mere vehicle therefor, and who immediately conveyed it to the children other than Adolph.

It is conceded that the actual consideration for such conveyance to Edward, William and Clara was the liquidation of the $5,500 note held by Edward; the

assumption by Edward of the mortgage for $1,500 on the Lake View property; the assumption by Edward of a note of Gottfried for $1,400, upon which Edward was liable as endorser, and designated in the record as the Kutz note; the payment of certain debts claimed to be owing to William; the payment to Clara for her services as housekeeper in the family; and an agreement by the three children, grantees, to support and maintain their parents, the grantors, in the future.

At the time of the conveyance the property on Milwaukee avenue was worth from $8,000 to $11,000, the lot on the corner of Leavitt and Lubeck streets was worth $900, and the premises in Lake View were worth $2,500, making a total valuation of from $11,400 to $14,400. The conveyance of this real estate by Gottfried left him without any property in excess of his exemptions.

If the agreement on the part of the grantees to support or maintain the grantors constituted a substantial element of the consideration for the conveyance, such conveyance was fraudulent in law as to creditors of the grantor Gottfried, whether or not any fraudulent intention was present in the minds of the parties. Lawson v. Funk, 108 Ill. 502; Gordon v. Reynolds, 114 Ill. 118; Moore v. Wood, 100 Ill. 451. The same rule would be applicable as to so much of the consideration for the conveyance as relates to the payment to Clara for her services as housekeeper in the family (Guffin v. First Nat'l. Bank, 74 Ill. 259), and also as to so much of the consideration as involved the mere assumption by Edward of the payment of the mortgage on the property in Lake View. Priest v. Conklin, 38 Ill. App. 180.

It remains to be considered whether the claim on the part of appellants, that Gottfried was actually indebted to his sons Edward and William in an amount sufficient to constitute an adequate consideration for the

conveyance, is supported by the evidence.

As heretofore stated, the family of Gottfried during the greater portion of the time involved consisted of himself, his wife and his four adult children. They resided at 784 Milwaukee avenue in rooms above the store, and lived frugally. The store was rented for $65 a month, and from the Lake View property a rental of $22 a month was realized. The sons Edward and William each paid $35 a month for their board. What amount, if any, Adolph paid for his board does not appear. Adolph was unsuccessful in business, and from time to time during his business career he received financial assistance from his father and his brothers. He was adjudged a bankrupt in 1904, and claims were filed against his estate by his father, Gottfried, for $500, by his brother Edward for $2,903.62, and by his brother William for $558.50. The claim of Gottfried was secured by the assignment of certain accounts, and a dividend of two per cent was realized by Edward and William upon their claims.

William testified that at the time of the conveyance in question his father was indebted to him in the sum of $1,600; that he arrived at this amount by charging his father with the sum in excess of $35 a month, which he had contributed to the support of the family, aggregating $750, and also $400 he had paid for his brother Adolph in July, 1905, or 1906, and $400 he had let his father have in 1903. He does not appear to have kept any account or made any memorandum relative to the alleged indebtedness of his father to himself, and the record fails to disclose that the relation of debtor and creditor, as between his father and himself, was ever recognized as existing until the conveyance was made. We are fully persuaded that the claim on the part of William, that his father was indebted to him in any amount, was a mere afterthought designed to meet the supposed exigencies of the case.

The claim of Edward rests upon a judgment note for $5,500, purporting to have been executed by his father January 2, 1906. He testified that the amount of the note was arrived at by charging his father with various items, as follows: $3,000 advanced by him on different occasions to his father and to his brother, Adolph, at his father's request; $511.83 paid by him on the note of his father and mother negotiated to Soelke; $500 paid by him on the note of his father and his brother Adolph to McKay; $21.60 paid by him on his note for that amount to McKay for interest on the $500 note; $683.06 paid by him on account of sundry bills owed by his father, and $800 advanced by him to his father on various occasions.

The evidence discloses that for several years prior to the conveyance in question, Edward collected all the rents from the property without accounting therefor to his father; that for $2,903.62 of the amount included in the note for $5,500 he filed a claim against the estate of Adolph, his bankrupt brother; that he kept no account of the bills which he claims to have paid for his father, or of the various amounts he claims to have advanced to his father, but that the aggregate of such amounts was arrived at by a process of ''lumping.'' If it be conceded, however, that the note to Edward for $5,500 represented a *bona fide* indebtedness from his father to himself, the payment of the note was so grossly inadequate a consideration for the conveyance as to render the latter fraudulent as to creditors.

The conveyance in question was properly held by the chancellor to be fraudulent as to appellee, and the decree is affirmed.

*Decree affirmed.*