## JOHNSON et al. v. EMERY et al.

No. 1725. Decided September 5, 1906 (86 Pac. 869).

1. ATTACHMENT—GROUNDS—ALTERNATIVE STATEMENT. Under Revised Statutes 1898, section 3064, subd. 3, authorizing an attachment in case the defendant has assigned, disposed of, or concealed any of his property with intent to defraud his creditors, and section 3066 authorizing the clerk to issue an attachment on an affidavit that the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant, and also specifying one or more of the causes set forth in section 3064 as a ground of attachment, an affidavit alleging that defendant had assigned, disposed of, or concealed, or was about to assign, dispose of, or conceal, his property with intent to defraud his creditors, alleged but a single ground for attachment, and was therefore not objectionable as alleging two grounds in the alternative.[1]

2. FRAUDULENT CONVEYANCES—CHANGE OF POSSESSION. A part of the goods attached as the property of N. had been purchased from N. by plaintiff. At the time of the sale all of the goods were in the possession of N., and he continued in such possession for about four months thereafter. R., to whom plaintiff gave written authority to take charge of the goods, up to that time had been in N's employ, and the bill of sale which R. showed the officer when the levy was made showed on its face that plaintiff had purchased all the goods from N. *Held*, that there was no such immediate delivery or actual continued change of possession of the goods as was required by Revised Statutes 1898, section 2473, providing that every sale of chattels, unless accompanied by a delivery within a reasonable time, and followed by actual and continued change of possession, shall be conclusive evidence of fraud as against the vendor's creditors, etc.

---

[1] Bank v. Little, Roundy & Co., 13 Utah 265, 44 Pac. 930.

3. CONFUSION OF GOODS—ATTACHMENT—EXTENT OF LEVY. Where goods purchased by plaintiff from C. were mixed with goods purchased by plaintiff from N., under a sale which was fraudulent as to N.'s creditors, and plaintiff took no steps to point out or separate the goods purchased from N. from those purchased from C. on the making of an attachment levy, but demanded from the officer a return of all of the property, the officer properly executed his writ on the property as a whole.

APPEAL from District Court, Salt Lake County; C. W. Morse, Judge.

Action by W. E. Johnson and another against C. Frank Emery and others. From a judgment in favor of defendants, plaintiff Johnson appeals.

AFFIRMED.

*Henderson, Pierce, Critchlow & Barrette* for appellants.

*A. L. Hoppaugh* and *E. A. Walton* for respondents.

### APPELLANTS' POINTS.

Proceedings in attachment, being a statutory proceeding and in derogation of the common law, are strictly construed, and no intendment whatever will be indulged in its favor, but the statute must be strictly complied with. (1 Shinn on Attachment, sec. 8.)

A statement in an affidavit for attachment that the defendant has disposed of his property, with intent to defraud his creditors, would, upon the face of the affidavit, state a cause for attachment. An affidavit which alleges several grounds for attachment in the alternative is bad, as being in the alternative and uncertain. (*Stacy v. Stichton,* 9 Iowa 399; *Kegel v. Schrenkheisen,* 37 Mich. 174; *Guile v. McNanny,* 14 Minn. 520, 100 Am. Dec. 244; *Cronin v. Crooks,* 143 N. Y. 352; *Roberts v. Burns,* 35 S. E. 922; 1 Shinn on Attach., sec. 150, p. 258; 1 Wade on Attach., sec. 56; Drake on Attach., sec. 102, p. 101.)

If the sheriff seizes property belonging to, and in the possession of a person not a defendant in his writ, intending to hold it, and claim it all as property belonging to the person against whom the writ is directed, and intending to hold it upon such levy, notwithstanding any claim of the person in whose possession it is found, and without making any inquiry or effort to ascertain whether all or any portion of it belongs to the party from whose possession he takes it, no demand is necessary, and no duty devolves upon the person from whose possession it is taken to point out the different sources of his title, or right to it, but the sheriff is a trespasser *ab initio* and the trespass and conversion are complete when the property is taken. (1 Shinn on Attachments, pp. 710, 714, and notes 407; *Smith v. Sanborn,* 72 Mass. 136; *Copp v. Williams,* 135 Mass. 401; 1 Wade on Attach., 264-268, sec. 134.)

A demand is only required to give the party upon whom the demand is made a chance to comply therewith, and if it is apparent, or appears plainly and conclusively, that such demand would have been useless, it waives all necessity for making the demand. (*Marine Bank v. Fiske,* 71 N. Y. 359; *Smith v. Sanborn,* 72 Mass. 136; *Hand v. Scodeletti,* 128 Cal. 674; *Rosenau v. Syring,* 25 Oregon 386, 35 Pac. 845; *Reading v. Lamphier,* 9 N. Y. Supp. 596; *Copp v. Williams,* 135 Mass. 401; Cobbey on Replevin, sec. 448.)

### RESPONDENTS' POINTS.

It is a well-settled rule of procedure that the bill of exceptions must be settled, signed and filed within the time required by law, or it does not constitute part of the record. (*Nye v. Railroad,* 124 Mass. 241; *Miller v. Cincinnati,* 47 Ohio St. 110; *Finley v. Whitley,* 46 Ohio St. 524; *Martin v. Railroad,* 51 Kan. 162; *White v. Gregory,* 126 Ind. 95; *Marselles v. Howard,* 136 Ill. 84; *Smith v. State,* 20 Fla. 839; *Irrigation Co. v. Mining Co.,* 19 Utah 470, 57 Pac. 537.)

Section 3064, Revised Statutes 1898, provides for five distinct grounds for attachment, and we concede that of these

five, no two can be stated alternatively. The Legislature, in stating five distinct grounds, has, nevertheless, recognized two different phases of the same ground.

Ground No. 3 is as follows: "Has assigned, disposed of or concealed, or is about to assign, dispose of or conceal any of his property with intent to defraud his creditors." The different phases of this ground, the essence of which is fraudulent disposition of property, arise from the time of such fraudulent disposition, and it may be either past or immediate future. Nearly all the cases, and in fact, all the well considered cases hold that a statement of this ground, substantially in the language of the statute, and using 'or' as it is used in the statute, is proper. (*Bank v. Little, Roundy & Co.,* 13 Utah 265, 272; *Dawley v. Sherwin* [S. D.], 59 N. W. 1027; *Klenk v. Schwalm,* 19 Wis. 124; *Parsons v. Stockbridge,* 42 Ind. 121; *Tessier v. Ingelhart,* 18 Neb. 167; *Russell v. Ralph,* 53 Wis. 328; *McCraw v. Welch,* 2 Colo. 284; *Conrad v. McGee,* 9 Yerg. [Tenn.] 428; Drake on Attach., 102; *Wood v. Wells,* 65 Ky. 197; *Societe, etc., v. Milliken,* 135 U. S. 304; *Irvin v. Howard,* 37 Ga. 18; *Cannon v. Logan,* 5 Porter [Ala.] 77.)

If the affidavit were defective, it is amendable and not subject to collateral attack. Section 3088, Revised Statutes 1898, provides that the attachment statutes shall be liberally construed; also that any defect in the affidavit or other proceedings may be amended. Further to the effect that the affidavit is amendable, see *Longworthy v. Waters,* 11 Ia. 432; *Henderson v. Druce,* 30 Mo. 358; *Campbell v. Whetstone,* 5 Ill. 361; *Penniman v. Daniel,* 93 N. C. 332. The following cases hold that where the affidavit is amendable the writ cannot be collaterally attacked: *Mathews v. Densmore,* 109 U. S. 216; *Scrivner v. Dietz,* 68 Cal. 1, 8 Pac. 609; *Moore v. Mauck,* 79 Ill. 391; *Bank v. Jandon,* 9 La. Ann. 8; *Barber v. Smith,* 41 Mich. 138; *Burnette v. McCluey,* 92 Mo. 230; *Moresi v. Swift,* 15 Nev. 215; *Russell v. Work,* 35 N. J. Law 316.

It is utterly immaterial, however, what might be held with

31 Utah—9

reference to the affidavit or its effect if defective for the reason that the execution is a complete justification so far as the process is concerned independently of the attachment proceedings. The attachment proceedings are merged in the judgment. (Drake on Attachments, 224a; *Porter v. Pieco,* 55 Cal. 165; *Harvey v. Foster,* 64 Cal. 296; *Scriver v. Dietz,* 68 Cal. 1.)

At the time of the sale to Johnson all the property was in Norris' possession. It was capable of manual delivery, and Norris continued retaining the possession of it. Under the statute this avoids, as to creditors, the sale. (Sec. 2473, R. S. 1898; *Wilson v. Hooper,* 21 Vt. 653; *Clow v. Woods,* 5 S. & R. [Pa.] 280; *Kirtland v. Snow,* 20 Conn. 23; *Edwards v. Bank,* 59 Cal. 148; *Greenbalm v. Wheeler,* 90 Ill. 296; *Claflin v. Rosenberg,* 42 Mo. 448.)

The goods were all confused and intermingled. The law is well settled that in such cases the sheriff not only has the right, but is bound to levy on the whole, and before he can be put in default or in the wrong the whole of the portion not subject to levy is bound to be identified and pointed out to the officer. (*Lewis v. Whitmore,* 5 N. H. 364; *Shumway v. Rutter,* 8 Pick. 443; *Sawyer v. Merrill,* 6 Pick. 478; *Wellington v. Sedgwick,* 12 Cal. 469; 8 Enc. Pl. & Pr., 533; *Wilson v. Lane,* 33 N. H. 466; 1 Shinn on Attach., 210; *Smokey v. Peters, Calhoun & Co.,* 66 Miss. 471, 475; *Robinson v. Holt,* 39 N. H. 557; *Weil v. Silverstone,* 69 Ky. 698.; *Hart v. Ten Eyck,* 2 John. Ch. 62, 2 Bl. Com., 405; *Duke v. Welsh,* 48 N. Y. Sup. Ct. 16, Jones & S. 516; *Mayer v. Wilkins,* 37 Fla. 244.)

### STATEMENT OF FACTS.

The material facts in this case, as disclosed by the evidence, are as follows: During the month of July and continuously thereafter until February 23, 1904, one John R. Norris was in possession of what is known as the "Ford Hotel" in Salt Lake City, Utah, occupying the building as a tenant and conducting a hotel business therein. When Norris first went

into possession all the furniture, carpets, bed linen, beds, table linen, kitchen utensils, and fixtures with which the hotel was furnished belonged to one S. W. Cox, who leased them to Norris at a rental of $60 per month. During the time Norris occupied the premises and conducted the business therein referred to, he purchased and placed in the hotel and mingled with the goods he had leased from Cox various articles, which consisted, in part, of carpet, rugs, linoleum, bed linen, table linen, a safe, typewriter, dishes, knives and forks, crockeryware, kitchen utensils, and many other articles necessary to the proper equipment of a hotel. The dishes, knives and forks, bed linen, table linen, and kitchen utensils purchased by Norris were used to replenish the stock of similar articles leased from Cox. In the latter part of September, 1903, Cox offered for sale all of his furniture and fixtures in the hotel. Norris, being desirous of having some persons purchase the furniture who would permit him to continue to lease it and carry on his business, applied to the plaintiff, Johnson, to purchase from Cox, offering at the same time to sell to him for $800 the property which he, Norris, had purchased and placed in the hotel at a cost of about $1,600. Johnson entertained the proposition favorably and after having examined all the goods and furniture as it was in the hotel, made Cox an offer of $1,300 for his (Cox's) furniture subject to a note secured by a chattel mortgage on the furniture amounting to about $2,300. This offer was accepted by Cox, and at the same time Johnson purchased from Norris the goods belonging to him and not owned or claimed by Cox. These negotiations were oral and the testimony offered with respect to them was objected to by defendants as tending to vary certain written instruments, bills of sale hereinafter referred to. The sale was completed October 24, 1903. Johnson was not present, but he had sent the money, etc., to J. A. Largent, an attorney at law who was authorized to act for all the parties to the transaction. Largent, through a desire to evidence the sale of all the goods from Norris to Johnson, had Cox execute a bill of sale of the leased goods to Norris, and, at the same time, prepared a bill of sale of all the goods

in the hotel from Norris to Johnson. These instruments showing, first a sale from Cox to Norris; and, second, a sale of all the goods and furniture in the hotel from Norris to Johnson, were executed simultaneously and delivered to Largent, who mailed them to Johnson. Largent also immediately went to the Ford Hotel and in the office thereof announced that he took possession of all the furniture, etc., named in the bill of sale in behalf of Johnson, which was assented to by Norris. There was no change in the actual possession of the property, nor any visible indication of change of ownership. It was a part of the arrangement between Johnson and Norris that the latter should pay rent to the former at the rate of $60 per month, and that, he rent being fully paid, he, Norris, might, at any time, purchase all the property at the price which it cost Johnson. About a month later (November 20, 1903) a formal written lease of all the property in the Ford Hotel from Johnson to Norris was drawn by Largent and executed by the parties. Johnson had the property insured in his own name and also paid the taxes assessed against it and paid $610 on the note and mortgage hereinbefore referred to. Norris continued to operate the hotel until on or about the 15th day of February, 1904, when, becoming financially embarrassed, he notified the guests to leave and closed the hotel and notified Johnson of what he had done. Johnson immediately came to Salt Lake City, arriving on the evening of Feruary 17th, at once formally took charge of all the furniture, fixtures, etc., in the hotel and placed in charge of the same one Harry Rand, who, up to the 15th of February, had been in the employ of Norris as engineer. Johnson arranged with the owner of the hotel building for the storage and gave to Rand the bill of sale, which he had received from Norris, of the property. Attached to this bill of sale was a list of all the property in the hotel. Johnson also gave Rand written instructions "to take charge of, care for, and protect the goods, wares, and furniture, etc., enumerated in the bill of sale herewith until further notice." Rand continued in possession of the property, intermingled as aforesaid, until dispossessed of the same as hereinafter set forth. On February

23, 1904, one Ambrose commenced an action in the city court of Salt Lake City against Norris to recover the sum of $64.50 alleged to be due on an express contract from him to Ambrose. On February 25th, E. G. Hines and T. J. Nipper, two of defendants herein, each commenced an action in the city court against Norris on express contracts for the payment of money. Summons was duly issued in each of the actions mentioned, writs of attachment issued and placed in the hands of defendant, C. Frank Emery, sheriff of Salt Lake county, for service. Emery duly served the writ of attachment in each case, levied upon and seized the goods in question as the property of Norris. At the time this was done the officer making the levy asked Rand for whom he was holding possession of the property. Rand replied that he was holding the goods for Johnson and showed the officer the bill of sale from Norris to Johnson and the schedule of the property attached thereto and at the same time showed his written authority from Johnson. No demand for a part only of the goods was made by the officer, nor was any offer made by the plaintiff to point out the specific goods purchased by Johnson from Cox. Nor was there any effort made by the plaintiff to separate any part of the goods from the rest, or to have the attaching officer make any discrimination or selection of the goods. On February 29th, Johnson made demand upon defendant Emery for the return of the property, which demand Emery refused to comply with, but continued to hold possession under the writs of attachment. Judgments were rendered against Norris in the three suits in which the attachments were issued and an execution in due form was issued in each case and all the property which was held under the writs of attachment was duly and regularly levied upon by Emery under the writs of execution. While the property was being held by Emery under the writs of execution, J. R. Norris was adjudged a bankrupt (May 14, 1904) by the United States court for the District of Utah, and the property so held by defendant Emery was turned over to W. R. Waples, the receiver of the property of the bankrupt, John R. Norris, and was administrated in bankruptcy with the knowledge of plaintiff.

Johnson brought this action against said C. Frank Emery, E. G. Hines, and T. J. Nipper to recover from them the sum of $5,000, the alleged value of the goods seized under the writs of attachment and execution referred to. A trial by a jury was had and after the evidence was all submitted, which showed substantially the foregoing facts, the court directed the jury to return a verdict for the defendants, which was done. To reverse the judgment entered on the verdict, plaintiff has appealed.

McCARTY, J., after stating the facts, delivered the opinion of the court.

Appellant's first contention is that the court erred in admitting in evidence, over plaintiff's objection, the attachment proceedings. It is claimed that "the affidavits in each of the cases were defective and void for the reason that they each stated two grounds of attachment in the alternative." In the case of *Ambrose v. Norris* the grounds alleged in the affidavit for the writ of attachment are as follows: "That the said defendant has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal, his property with intent to defraud his creditors." With the exception of a slight change in the phraseology, the allegations of the grounds for attachment in the affidavits of the other two cases mentioned in the foregoing statement of facts are substantially the same as the grounds alleged in the *Ambrose Case.*

Section 3064, Rev. St. 1898, specifies five separate and distinct grounds of attachment. Subdivision 3 of said section is as follows:

"Has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal, any of his property with intent to defraud his creditors."

Section 3066 provides:

"The clerk of the court shall issue the writ of attachment upon receiving an affidavit by or on behalf of the plaintiff, which shall be filed, setting forth," among other things, that the action is not prosecuted to hinder, delay, or defraud any creditor of the defendant, "and also specifying one or more of the causes set forth in section three thousand and sixty-four as the ground of attachment."

The cause alleged in the affidavit under consideration for writs of attachment was that J. R. Norris had disposed of or was about to dispose of his property with intent to defraud his creditors. While there are several different phases of this ground set forth in subdivision 3 of section 3064, the essence of which is the fraudulent disposition of property, we are of the opinion that they constitute but one cause or ground for an attachment, and that the entire subdivision may be stated in an affidavit for a writ of attachment. It may often happen that the party making the affidavit may know that the defendant has disposed of, or is about to dispose of, his property by one or more of the ways mentioned in section 3064, but may be in doubt, or unable to state, as to the specific manner in which he has or is about to place his property beyond the reach of his creditors. It is therefore apparent that the construction contended for by appellant, if adopted and followed, would, in many cases, defeat the very object and purpose of the statute. While there is some conflict in the authorities as to whether a statement of this ground made substantially in the language of the statute is sufficient to authorize the issuance of a writ of attachment, we think the weight of authority holds that it is sufficient. This court in effect so held in the case of *Bank v. Little, Roundy & Co.,* 13 Utah 265, 44 Pac. 930. In the case of *Dawley v. Sherwin,* 59 N. W. 1027, the Supreme Court of South Dakota, in considering a statute of that state, exactly like the one under consideration, said:

"It will be observed in this case that the causes or grounds for an attachment are stated in the language of subdivision 5 of section 4995 (Comp. Laws 1888) and the first subdivision of section 5014, and we are disposed to believe that each group or subdivision constitutes but one cause or ground for an attachment, and that the entire subdivision may thus be stated in an affidavit for a warrant of attachment."

So, in the case of *Klenk v. Schwalm,* 19 Wis. 113, it is said:

"It is impossible, frequently, for a creditor to ascertain whether a debtor has actually consummated a fraudulent transfer of his property, or whether he is about to do so; and therefore the Legislature have

made these one ground for an attachment. Fraudulent sales are generally secret; and it may be very difficult to say, at a given moment, whether they are fully accomplished or not. Hence a party is permitted to state his case in the alternative—that the defendant has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal, his property, with intent to defraud his creditors. And when regard is had to the manner in which the Legislature has enumerated the different cases in which attachments may issue, there can be no doubt that the second subdivision of section 2 (Rev. St. Wis. 1858, c. 130) was considered as constituting in fact one ground or cause of attachment."

In *Parsons v. Stockbridge*, 42 Ind. 121, the court says:

"The ground of the motion to dismiss the attachment was the insufficiency of the affidavit in stating the cause for the attachment. * * * The objection to it is that it is in the alternative. The objection is not well taken. Where the disjunctive 'or' is used not to connect two distinct facts or different natures, but to characterize and include two or more phases of the same fact, attended with the same results, the construction contended for is not applicable."

In *Tessier v. Englehart*, 18 Neb. 167, 24 N. W. 734, the Supreme Court of Nebraska, in construing a similar statute, said:

"Here are nine distinct grounds or causes upon either of which an order of attachment may issue. Some of them embrace but one allegation, while others, and most of them, are compound in their character; but whether single or compound, each one contains but a single cause of action, and it cannot be urged as an objection to an affidavit or pleading under this section that it contains disjunctive language, as long as it contains but one of said grounds or causes of action, and substantially follows the language of the statute."

Mr. Drake in his work on Attachment, section 102, says:

"Let it be observed, however, that where the disjunctive 'or' is used not to connect two distinct facts of different nature, but to characterize and include two or more phases of the same fact, attended with the same results, the construction just mentioned (section 101a, referring to distinct statutory grounds) would be inapplicable." This same doctrine is declared by the following authorities: *Russell v. Ralph*, 53 Wis. 328, 10 N. W. 518; *McCraw v. Welch*, 2 Colo. 284; *Conrad v. McGee*, 9 Yerg. (Tenn.) 428; *Societe Fonciere v. Milliken*, 135 U. S. 304, 10 Sup Ct. 823, 34 L. Ed. 208; *Irvin v. Howard*, 37 Ga. 18; *Cannon v. Logan*, 5 Port. (Ala.) 77; *Wood v. Wells*, 2 Bush. (Ky.) 197; 4 Cyc. 504; 3 Enc. Pl. & Pr. 24, 25; 1 Shinn on Attach. and Garnishment, 145, 146.

Appellant's next complaint is that the court erred in directing the jury to return a verdict for the defendant. A part of the goods levied upon was property which appellant purchased from Norris, the judgment debtor in the suit in which the writ of attachment and writs of execution were issued. At the time of the sale from Norris to appellant all of the goods were in the possession of Norris, and he continued in such possession for about four months thereafter. Rand, to whom Johnson gave written authority "to take charge of, care for, and protect the goods," up to that time, had been in the employ of Norris, and the bill of sale, which Rand showed the officer at the time the levy was made, on its face showed that Johnson had purchased the entire stock from Norris. We do not think there was the immediate delivery and actual continued change of possession of the goods as required by section 2473, Rev. St. 1898, which provides, so far as material here, as follows:

"Every sale made by a vendor of goods or chattels in his possession or under his control, and every assignment of goods and chattels, unless the same be accompanied by a delivery within a reasonable time, and be followed by an actual and continued change of the possession of the things sold or assigned, shall be conclusive evidence of fraud as against the creditors of the vendor, or assignor, or subsequent purchasers in good faith." (*Kirtland v. Snow,* 20 Conn. 23; *Edwards v. Bank,* 59 Cal. 148; *Claflin v. Rosenberg,* 42 Mo. 448, 97 Am. Dec. 336.)

As we have pointed out in the foregoing statement of facts, the goods which appellant purchased from Norris were mingled with those purchased from Cox and were not capable of being identified or distinguished. Appellant made no offer at the time the levy was made, nor at any time thereafter, to point out or to separate the goods purchased from Norris from those purchased from Cox; on the contrary, appellant made demand on the officer for the return of all the property. Under these circumstances the officer making the levy not only had the right, but was bound to levy on the whole of said goods, or so much thereof as was necessary to satisfy the several claims upon which the actions were predicated in which the writs of attachment and the writs of execution were is-

sued. The law is well settled that where goods are intermixed and confused with the knowledge of the owners thereof, so that they are incapable of being identified or distinguished, as the record shows was done in this case, and a part only of the goods would be subject to levy were it not for such commingling and confusion of property, it is incumbent upon the party claiming to be the owner of that portion not subject to levy to point them out and make a demand for their return when seized by an officer under a writ of attachment or a writ of execution. And until this is done the officer making the levy is not, and cannot, be considered a trespasser.

In 8 Enc. Pl. & Pr., 533, the rule is tersely and, as we think, correctly stated as follows:

"When the goods belonging to the debtor are so mixed or confused with the goods belonging to a stranger that the property of the one cannot be identified and distinguished from the property of the other, and if the stranger fails to point out to the sheriff or designate the goods which are not subject to execution, the sheriff may levy on the whole."

In *Wellington v. Sedgwick*, 12 Cal. 469, the Supreme Court of California announced the same doctrine, and in the course of the opinion it is said:

"If the goods bought were fraudulently sold to Wellington, they were, of course, subject to execution; and if they were so mixed or confused with other goods as that they could not be identified or distinguished, and Wellington failed to point out to the sheriff, or designate the goods which were not subject to execution, the sheriff could not be liable for levying on the whole. But the sheriff would be bound, after the levy, on notice to him of the goods not liable, to restore them; but this notice must be specific, apprising him of and designating the particular goods improperly seized, and must be given previously to suit brought." (1 Shinn on Attachment and Garn. 210; *Lewis v. Whittemore*, 5 N. H. 364, 22 Am. Dec. 466; *Shumway v. Rutter*, 8 Pick. [Mass.] 443, 19 Am. Dec. 340; *Sawyer v. Merrill*, 6 Pick. [Mass.] 478; *Wilson v. Lane*, 33 N. H. 466; *Smokey v. Peters-Calhoun Co.*, 66 Miss. 471, 5 South. 632, 14 Am. St. Rep. 575; *Robinson v. Holt*, 39 N. H. 557, 75 Am. Dec. 233; *Duke v. Welsh*, 48 N. Y. Super. Ct. 516.)

We find no reversible error in the record. The judgment is therefore affirmed with costs.

BARTCH, C. J., and STRAUP, J., concur.