PEOPLES STATE BANK, Respondent, v. KARLEN et al., Appellants.

(182 N. W. 531.)

(File No. 4766.    Opinion filed April 2, 1921.    Rehearing denied May 11, 1921.)

1.  **Attachment—Affidavit Alleging Transfer, Etc., "Or About To Transfer," Disjunctive Statement—Whether Sufficient.**

    A copy of the affidavit for attachment disclosing an allegation that defendants have "secreted, incumbered, transferred, or otherwise disposed of, or are about to transfer, etc.," is sufficient although in the disjunctive (following Dawley v. Sherwin, 5 S. D. 59;) since it is practically impossible for a creditor to ascertain whether debtor has actually consummated a fraudulent transfer of property, or whether he is about to do so; hence a party may state his case in the alternative.

2.  **Same—Original Affidavit in Conjunctive, Served Copy in Disjunctive—Defect in Original Affidavit, Effect Regardless of Sufficiency of Copy Served—Clerical Error in Changing Original Affidavit, Non-prejudicial When.**

    Where the original affidavit in attachment set forth the allegation of fraudulent transfer, etc., in the conjunctive, while the served copy and the original writ stated them in the disjunctive, **held,** that, it being obvious that the unexplained change in the original affidavit must have been a mere clerical error which could not and did not mislead and result in prejudice to defendant; hence such variance is not ground for reversal of the appealed-from order sustaining the attachment. **Held,** further, that had the original affidavit been fatally de-

fective, the attachment would have been void regardless of the
sufficiency of the copy served.

3.   Same—Defendant Grain Dealer's Agreement to Deposit Business
     Checks in Seeking Bank Credit, Diversion of Checks to Other
     Use, Whether a Fraudulent Transfer, Whether Ground For
     Attachment—Note for Overdrafts, Non-agreement For De-
     posits Re, Effect.

     The fact that defendant, about to engage in the business of
buying grain and stock for shipment, when applying to plaintiff
bank for credit, agreed with plaintiff as a consideration of such
accommodation that all checks, drafts and remittances for
stock and grain shipped should be deposited in said bank, and
that defendant thereafter deposited certain checks or remit-
tances for stock shipped with other banks, and wrongfully
used proceeds thereof in certain realty investments in his wife's
name, furnishes no basis for an attachment against his property
for fraudulent transfer thereof; such deposits and use of pro-
ceeds being merely a breach of agreement, and in absence of
actual fraudulent intent existing at the time the agreement was
made, is not ground for attachment. Held, further, that, the
indebtedness sued on being evidenced by promissory note given
to cover overdrafts incurred in the course of business and the
record failing to show that the giving of the note was induced
by any agreement as to deposit of proceeds of shipment, etc.,
at time it was given, such facts furnish no basis for attachment.

4.   Same—Alleged Removal of Property From State, Regular Inter-
     state Live Stock Shipment, Whether Grounds For Attachment.

     An allegation in an affidavit for attachment that defendant
was removing his property from the state with intent to de-
fraud creditors, is not sustained by evidence conclusively show-
ing that the interstate stock shipments in question were made
in the ordinary mode in which defendant transacted his live
stock dealer's business.

5.   Same—Debtor's Agreement to Deposit Live Stock Shipment Pro-
     ceeds With Plaintiff Bank—Application of Proceeds in Realty
     Investments in Wife's Name, Deeding Family Homestead to
     Wife, Part Purchase Money From Wife—Payment of Debt to
     Wife, Effect Re Attachment.

         Where debtor who had agreed with plaintiff bank, in con-
sideration of credit extended, to deposit proceeds of live stock
shipments in said bank, but deposited part thereof in another
bank, using the proceeds in payment for certain realty taken
in his wife's name, and who deeded the family homestead to
his wife; the evidence showing that part of the purchase price
was paid by the husband, the balance with wife's money bor-
rowed from her mother and which she still owed, and that

debtor's money was paid at wife's request in consideration of his debt to her; all these facts being fully corroborated; held, that they constitute no ground for an attachment against debtor's property. And while in any transfers between husband and wife which prima facie may affect rights of creditors, the law exacts full and frank disclosure of facts and circumstances connected therewith, yet the above stated facts meet this requirement.

6. Fraudulent Transfers—Transfer to Wife—Transactions Re Husband and Wife, Rule of Scrutiny Re, Preferring Wife as Creditor, Effect Re Attachment, Husband As Wife's Agent, Propriety Of.

The rule that transactions between husband and wife which affect creditors should be closely scrutinized is well understood; but (following Williams v. Harris, 4 S. D. 22) the separate property rights of husband and wife and their independence from each other in business transactions, are carefully defined and established by our statute, (Code 1919, Sec. 171;) and when husband is honestly indebted to wife, his having chosen to pay her in preference to other creditors does not make him guilty of disposing of property with intent to hinder, etc., creditors. And, (following Clark v. Else, 21 S. D. 112) court's must recognize the fact that under our state laws a wife may transact business and acquire and hold property in her own name, and husband may properly, and without it being regarded as fraudulent, act as her agent in transacting such business; and where transactions between them are shown to be fair and that property thus acquired actually belonged to the wife, her rights thereto will be protected by courts.

7. Fraudulent Transfers—Transfer of Homestead Without Valuable Consideration—Excess Value of Transferred Homestead, Whether Attachable, Actual Fraudulent Intent Necessary.

While conditions may arise which render a deed to a homestead fraudulent and void as to creditors, although their rights be postponed until debtor and family have no further occasion to occupy the premises (Kettleschlager v. Ferrick, 12 S. D. 455,) the further question of the effect of the statutory right of creditors to subject the homestead value in excess of $5000.00 to their claims involves the truism that no creditor can be defrauded, hindered or delayed by transfer of homestead property which cannot be subjected to claims of creditors, and that the right to transfer homestead cannot be postponed for benefit of creditors until a time when an increase in its value may leave an excess subject to their claims; yet a transfer of a homestead may be deemed in fraud of creditors where its

value exceeds $5000. at time of transfer; and where, as here, the transfer was without valuable consideration, the contention that its transfer to wife could not be a means of defrauding husband's creditors is not conceded; and where conflicting affidavits show varying values of homestead equal to or above $5000.00, and the rule being that actual intent to hinder, etc., creditors is necessary to sustain attachment, therefore, **held**, that unless husband's intent to defraud his creditors through transfer of homestead to wife existed as a fact, and appears from evidence, attachment is not sustainable; this under evidence tending to show debtors actually believed its value did not exceed $5000.00 and that husband might legally transfer it to wife with or without consideration; which view negatives existence of actual fraudulent intent.

Gates, J., dissenting.

Whiting, J., concurring specially.

Appeal from Circuit Court, Miner County. HON. ALVA E. TAYLOR, Judge.

Action by Peoples State Bank, a corporation, against E. J. Karlen and Louesia Karlen, involving attachment of defendants' property. From an order refusing to dissolve an attachment, Defendants appeal. Reversed.

*W. E. Weygint,* and *Spangler & Wire,* for Appellant.

*Baldwin & Lyons,* and *Gardner & Churchill,* for Respondent.

(1) To point one of the opinion, Appellants cited: Dawley v. Sherwin, 5 S. D. 594.

Respondent cited: Tessier v. Englehart, 18 Neb. 167, 24 N. W. 734.

(6) To point six, Appellants cited: Kolbe v. Harrington, 15 S. D. 263; Williams v. Harris, 4 S. D. 22.

Respondent cited: Smith v. Tosini 1 S. D. 632, 48 N. W. 299.

(7) To point seven, Respondent cited: Pech Mfg. v. Groves,, 6 S. D. 504; Kettleschlager v. Ferrich, 12 S. D. 455; 6 C. J. 431.

SMITH, J. Appeal from an order refusing to dissolve an attachment issued on an affidavit alleging that defendants had "secreted, incumbered, transferred, or otherwise disposed of *and* are about to secrete, incumber, transfer, or otherwise dispose of their property with intent to defraud or delay their creditors," and "have removed and are about to remove some of their prop-

erty from the state with intent to defraud or delay their creditors, and that the debt upon which this action is founded was incurred for property obtained under false pretenses." The copies of the affidavit for attachment served alleged that defendants "have secreted, incumbered, transferred, or otherwise disposed of, *or* are about to transfer," etc.

[1] Appellant attacks the attachment proceedings on the ground that the affidavit is in the disjunctive.

In Dawley v. Sherwin, 5 S. D. 594, 59 N. W. 1027, this court held such an affidavit sufficient under the statute, quoting with approval from Klenk v. Schwalm, 19 Wis. 113, where that court, construing a similar statute, said:

"It is impossible, frequently, for a creditor to ascertain whether a debtor has actually consummated a fraudulent transfer of his property, or whether he is about to do so; and therefore the Legislature has made these one ground for an attachment. Fraudulent sales are generally secret; and it may be very difficult to say, at a given moment, whether they are fully accomplished or not. Hence a party is permitted to state his case in the alternative, that the defendant has assigned, disposed of, or concealed, or is about to assign, dispose of, or conceal, his property, with intent to defraud his creditors."

Dawley v. Sherwin has been cited with approval by courts of other states having similar statutes. McCarthy Bros. Co. v. McLean County F. E. Co., 18 N. D. 176, 118 N. W. 1049, 138 Am. St. Rep. 757, 20 Ann. Cas. 577; Cook v. Burnham, 3 Kan. App. 27, 44 Pac. 447; Johnson v. Emery, 31 Utah, 126, 86 Pac. 869, 11 Ann. Cas. 23; Tessier v. Englehart, 18 Neb. 167, 24 N. W. 734; 6 C. J. 136, § 209.

[2] We hold the affidavit as served was sufficient. Appellant, however, contends that the service was ineffectual, because the original affidavit was in the conjunctive, and a true copy was not served with the attachment. If the original affidavit had been fatally defective, the attachment would have been void regardless of the sufficiency of the copy served. 6 C. J. 102, § 149. It must be conceded, however, that the original affidavit was sufficient in form to sustain an attachment. Deseret Nat. Bank v. Little R. & Co., 13 Utah, 265, 44 Pac. 930. We are of the view, upon examination of the original writ, the recitals in which are

in the disjunctive, as they are in the copy served, that the unexplained change in the original affidavit from the disjunctive to the conjunctive must have been a mere clerical error which could not and did not mislead or result in prejudice to appellants, and that such variance should not be held a ground for a reversal of the order appealed from.

[3-5]. As ground of fraud in the creation of indebtedness plaintiff alleged, in substance, that defendant E. J. Karlen for several years had been engaged in the business of buying grain and stock for shipment; and when he first engaged in said business he applied to plaintiff bank for credit, and as a condition of such accomodation agreed that all checks, drafts, and remittances for stock and grain shipped should be deposited in plaintiff bank; that respondent had then recently received two checks or remittances for stock shipped which he had deposited in other banks; that he had wrongfully used the proceeds thereof in making certain real estate investments, in the name of his wife Lauesia Karlen. Assuming the facts to be as alleged by respondent, that appellant agreed to deposit the proceeds of sales in respondent bank, the mere failure to make such deposits was nothing more than a breach of agreement, and, in the absence of actual fraudulent intent existing at the time the agreement was made, is not a ground for attachment. Rohan Bros. & Co. v. Latimore, 18 Mo. App. 16; Geneva Nat. Bank v. Bailor, 48 Neb. 866, 67 N. W. 865. And the fact that appellant, several years later, chose to make his wife a preferred creditor, if honestly indebted to her, affords no evidence whatever of an original intention on his part to defraud the plaintiff bank. This indebtedness sued upon is evidenced by a promissory note signed by the defendant E. J. Karlen alone, which was given to cover overdrafts, the proceeds of which were used by Karlen in his business of buying and selling grain and stock for shipment. The record does not show that the giving of this note was induced by any agreement as to deposit of proceeds of shipments, or any representations as to financial circumstances, made at the time the note was given. The allegation that appellant was removing his property from the state, with intent to defraud his creditors, is not sustained by the record, as it conclusively appears that the shipments of stock were made in the ordinary mode in which appellant transacted his busi-

ness. The allegations which are material relate to the disposition made by appellant of the proceeds of such shipments. It is contended that appellant was guilty of disposing of his property with intent to defraud his creditors by reason of his having deposited the proceeds of two shipments of stock in banks other than plaintiff's, and having used such proceeds in the payment for or purchase of certain real estate taken in the name of his wife, and the further fact that he deeded the family homestead to his wife. The transactions whereby the real estate was purchased were carried on by the husband, and a part of the purchase price was paid by the husband, but the balance is shown to have been paid by the wife with money borrowed from her mother, and which she still owes. Appellant concedes that proceeds of the two shipments of stock formed a part of the consideration paid for the real property now standing in his wife's name, but alleges that the money he paid was paid at her request in satisfaction of the indebtedness due to her. It appears that some eight years previously the husband had engaged in the mercantile business at Howard; that his wife then had about $3,000 in money received from her father's estate, which she invested in said businesss and became owner of a half interest therein; that she worked in the store until the business was sold for over $11,000 some five or six years later; that one-half of the proceeds of said sale belonged to her; that she permitted appellant to use her share of said money in his business, and that no part of the same had been repaid; that the part of the purchase price of the land paid by the husband was in payment of this indebtedness. The entire transactions concerning the indebtedness to the wife and payment thereof are fully disclosed by the affidavits of appellant and his wife, and are corroborated by affidavits of disinterested witnesses, which evidence is practically undisputed.

[6] The rule that transactions between husband and wife which affect creditors should be closely scrutinized is well understood. Smith v. Tosini, 1 S. D. 632, 48 N. W. 299. But, as was said by this court in Williams v. Harris, 4 S. D. 22, 54 N. W. 926, 46 Am. St. Rep. 753:

"The separate property rights of husband and wife, and their independence from each other in business transactions, are

carefully defined and established by our statutes." Rev. Code 1919, § 171.

And, when the husband is honestly indebted to the wife, the fact that he may choose to pay her in preference to his other creditors does not make him guilty of disposing of his property with intent to hinder, delay or defraud his creditors.

In Clark v. Else, 21 S. D. 112, 110 N. W. 88, this court said:

"While it is the duty of courts to carefully scrutinize the transactions between husband and wife, they must recognize the fact that, under the laws of this state, a wife may transact business and acquire and hold property in her own name and that the husband may properly act as her agent in the transaction of such business, and courts will not assume that, because the husband is acting as the agent of his wife in the management of her business, that they are acting fraudulently, and where the transactions between the husband and wife are shown by the evidence to be fair, and it appears therefrom that the property acquired in such business actually belonged to the wife, her rights thereto will be protected by the courts"—citing Watt v. Morrow, 19 S. D. 317, 103 N. W. 45.

In property transactions between husband and wife which prima facie may affect the rights of creditors, the law exacts a full and frank disclosure of every fact and circumstance connected therewith. We are of the view that appellants have met this requirement, that Karlen's indebtedness to his wife is shown to have been bona fide, and that the money paid by him was a preference, and was not given to his wife for the purpose of concealment of assets in fraud of his creditors. The details of the transactions are voluminous, and a recital thereof would serve no useful purpose.

[7] The transfer of the homestead, which was without any valuable consideration, presents a more difficult question. In Kettleschlager v. Ferrick, 12 S. D. 455, 81 N. W. 889, 76 Am. St. Rep. 623, this court held that, where a homestead was conveyed to the wife with a secret agreement that she should hold the title so that the claims of the husband's creditors might be defeated after the premises ceased to be impressd with the homestead

character, the transaction was fraudulent as to such creditors. In that case this court said:

"Conditions may possibly arise which render a deed to the homestead fraudulent and void as to creditors, although their rights be postponed until the debtor and his family have no further occasion to occupy such premises"

—referring, of course, to the eventual liability of homestead property to be subjected to the claims of creditors of the holder of the legal title.

The effect of the statutory right of creditors to subject the homestead value in excess of $5,000 to their claim was not considered in any of these cases. It is true, of course, that no creditor can be defrauded, hindered, or delayed by a transfer of homestead property which cannot be subjected to the claims of creditors, and it is equally true that the right to transfer a homestead cannot be postponed, for the benefit of creditors, until such time that an increase in its value may leave an excess subject to their claims.

We are of the view, however, that a transfer of the homestead may be deemed in fraud of creditors, where it is of a value in excess of $5,000 at the time of such transfer. In the case at bar the transfer was without valuable consideration, and we are not prepared to concede appellant's contention that its transfer to the wife could not be a means of defrauding the husband's creditors.

[8] Appellants' argument is based upon the contention sustained by a number of affidavits that the homestead was of the value of only $5,000, and therefore its transfer to the wife could not hinder, delay, or defraud creditors. Respondent's contention, however, is that its value was $8,000. In the first place, it must be borne in mind that an actual intent to hinder, delay, or defraud creditors is necessary to sustain an attachment. Constructive fraud is not sufficient. Trebilcock v. Mining Co., 9 S. D. 206, 68 N. W. 330; Bank v. McMillan, 9 S. D. 227, 68 N. W. 537; Brekke v. Waite, 36 S. D. 26, 153 N. W. 901.

It follows that, unless the husband's intention to defraud his creditors by means of the transfer of the homestead to his wife existed as a fact, and appears from the evidence, the attachment cannot be sustained. The evidence of the husband and wife as

to the actual value of the homestead is corroborated by the testimony of disinterested and competent witnesses, and is not strongly controverted by the affidavits of plaintiff's officers. We are inclined to the view that appellants actually believed that the homestead did not exceed $5,000 in value, and that the husband had the legal right to transfer it to his wife either with or without consideration. Such view negatives the existence of an actual fraudulent intent to place the homestead property beyond the reach of creditors. Bank v. Kendall, 20 S. D. 314, 106 N. W. 53, 129 Am. St. Rep. 936.

A full and careful consideration of the entire record leads us to the conclusion that the trial court erred in sustaining the attachment, and the order appealed from is therefore reversed.

GATES, J., dissents.

WHITING, J. (concurring specially.) If it were not for one thing disclosed by the record herein, I should feel compelled to dissent from the result announced in the foregoing opinion. This action, as it appears from the complaint, was one wherein plaintiff sought damages for fraud and deceit; it was not an action based on the promissory note. The plea of the alleged tort was for the purpose of trying to hold the wife as well as the husband liable. Let us suppose that plaintiff had charged that, through the fraud and deceit of these defendants, it had been induced to make some third party a loan of money and to take such third party's note therefor; and let us suppose that plaintiff, instead of suing such third party on the note, had seen fit to sue defendants for damages resulting from the alleged fraud and deceit. It is perfectly clear that plaintiff would not thereafter be entitled to amend his complaint, making the maker of the note the sole defendant, and dismissing the action brought against the original defendants; the cause of action for deceit and the cause of action on the note would be entirely separate and distinct. Such causes of action are no less separate and distinct simply because, through deceit, the plaintiff might have been led to make a loan to one of the parties guilty of the deceit. Having the above in mind, let us see what is disclosed by this record. This action was brought charging deceit—that is, the obtaining of a loan of some $9,000 through the fraud and deceit of these two defendants. A motion was made to dissolve the

attachment that had been issued. On the hearing of such motion an affidavit is presented, which affidavit refers to the complaint. Thereby the court was advised of the nature of the cause of action. Just as soon as it appeared, as it certainly did appear, from the evidence submitted upon such motion, that this cause of action for tort was unfounded, the trial court should have dissolved the attachment, basing such action upon the ground that it appeared that the cause of action stated in the complaint did not exist, and that, inasmuch as the complaint was not properly subject to an amendment allowing suit on the note, the action as brought must of necessity fail and the attachment be vacated.